# Wood *et al. v.* Holly Manufacturing Company.

*Bill in Equity to Enforce Equitable Lien for Purchase-Money of Machinery.*

1. *Equitable lien for purchase-money of machinery.*—A contract by which pumping engines are sold for waterworks and after being placed in a pumping house on the purchasers land on a foundation prepared for them and fastened thereto by bolts and taps so that they can be removed without injury to such foundation or to the building, are to be subjected to a thorough test for a stipulated period, and which are to be paid for in stated amounts at stated times after a successful test, and to remain in possession of the seller and subject to a lien in his favor until fully paid for, creates a valid equitable lien in equity which cannot be impaired or destroyed by the purchaser without the concert, fault or negligence of the seller.

2. *Same; how enforced.* An equitable mortgage, or lien in the nature of a mortgage, is enforceable alone in equity; and a legal mortgage at law or in equity.

3. *Same; as affected by attaching the machinery to realty.*—When pumping engines sold for water works are annexed to the realty of the purchaser under a conditional agreement that the engines after being so attached to the realty to be capable of removal without injury to the premises, should be subjected to thirty days test, and that if such test was satisfactory were not to become the property of the owner of the realty until fully paid for, it sufficiently appears that it was not the intention of the parties that the engines should become part of the realty, and the agreement is not inconsistent with the fact that a lien was intended to be retained by the seller.

4. *Same; on several articles for the price of the whole not discharged as to one by payment of its price.*—When a lien is given upon two pumping engines until "the whole amount of the purchase price of said engines," has been fully paid. the payment of the price of one of the engines does not discharge it from the lien for the aggregate price of the two.

5. *Same ; enforcement of on property of water company not refused because of public inconvenience.*—A lien for the purchase-money of machinery sold for water works is not incapable of enforcement because of inconvenience that might result therefrom to the public.

6. *Evidence*; presumption from failure to prove material fact capable

[Wood et al. v. Holly Manufacturing Co.]

*of proof.*—A fact important to be proved for the defense, which is capable of proof. but not proved, will be presumed not to exist.

7. *Validity of equitable lien on machinery attached to realty as against purchaser of realty.*—The equitable lien of the seller of pumping engines for water works and which are attached to realty, will prevail as against a purchaser of the realty unless the purchaser establishes that the engines were so attached to the free hold as to become fixtures, and that he is a *bona fide purchaser of the realty for value without notice.*

8. *Mortgage of after acquired property.*—A mortgage covering after acquired property does not take precedence of a lien expressly retained by the seller on the property for its price.

9. *Quit-claim deed*—One claiming under a quit-claim deed can not claim protection as a *bona fide* purchaser without notice.

10. *Equitable lien on machinery, sold to be attached to realty, for price of whole—extent of as against purchaser of the realty.*—Where a contract for the erection of machinery on the defendants premises reserves a lien on all the machinery for the price of the whole, the fact that before all the machinery is set up on the premises, the latter are conveyed to another person, who takes with notice of the contract, does not affect the existence of the lien on all the machinery though part of it be erected after such conveyance.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. W. H. TAYLOE.

On the 13th of December, 1886, a contract was entered into, between the Bienville Water Supply Company, hereafter referred to as the Water Company, and Bullock & Co., by which the latter undertook to construct for the former, a complete system of water works, including the furnishing of engines and pumps, contracting to pay Bullock & Co. for the work to be done, in bonds, and shares of its stock.

To procure a site for the water works, Bullock & Co. purchased a tract of land, and on the 13th of December, 1886, received from their grantor a conveyance thereof to themselves, and immediately took possession, and erected thereon an engine and pump-house, in which they afterwards placed the engines and pumps for said works.

In order to carry out its contract with Bullock & Co. and enable them to perform their contract, in the building and completion of said water works, the water company, on the 1st of January 1887, made and delivered to the Farmer's Loan & Trust Company, of New York, a mortgage on all its real and personal property then owned, or which might thereafter be acquired, in trust to secure bonds to be issued by said water company, for the purposes specified, in the sum of $750,000, and did also, thereupon, duly execute its bonds in the aggregate, amounting to said sum, and deliver the same, together with certificates for the full amount of its capital stock, being the sum of $500,000 par value, to said Bullock & Co. to proceed with and complete said water

works, to be in full payment to them therefor, when completed. Said mortgage was filed for record and duly recorded in the Probate Court of Mobile County, on the 24th day of February, 1887, and is still in force. The Loan & Trust Co. accepted the trust.

On the 24th of February, 1887, Bullock & Co. for the purpose of complying with their contract with the Water Company, and while yet the owners of the legal title of said tract of land, purchased by them on the 13th of December, 1886, as a site for said water works, entered into an agreement with complainant, the Holly Manufacturing Co. by which it agreed to manufacture and set up in working order in said engine and pump-house, two pump-engines and connections, the same to be paid for by Bullock & Co. in installments, specified in the contract.

It was provided in said contract, that "When said engines and connections are completed and ready for service, and on notice thereof to the pary of the first part (Bullock & Co.) to that effect, the same shall be subjected to a fair trial of their capacity and efficiency, for not exceeding 24 hours, and on the successful testing thereof, the liability of the the party of the second part (complainant) shall cease and determine, but it is expressly understood and agreed, that party of the second part shall have a lien on all of said engines and connections, and the said party of the second part may remain in and have full possession thereof, until the whole amount of the purchase price of said engines and connections shall have been fully paid to the party of the second part or its assigns."

Complainant constructed, and erected such engines and pumps in said house, prepared for their reception, in full and satisfactory compliance with their contract, so far as appears, the first engine with its connections having been so erected, prior to 21st March, 1888. It had commenced to erect the second, prior to that date, was engaged in erecting it at that time, and finished its erection soon thereafter—by about the middle of April, 1888. Each engine, with the pump and connections, is placed, as is averred and shown, upon a foundation prepared for it, and fastened thereto by bolts with taps, and can be removed therefrom, and from the building, without injury to the foundation, or to the pumping-engine house.

On the 21st March, 1888, Bullock & Co. executed to the Water Co. a quit-claim deed, to the land on which they had erected said structure, and which was conveyed to them on the 13th of December, 1886.

Subsequent to the making of said contract between complainant and Bullock & Co., for the construction of said engines, pumps and connections, and prior to the 1st of January, 1888, the said Bullock & Co., in order to raise the money to carry on the construction of said water works, and several other like water company systems, which they were then engaged in constructing, and to pay, among other things, for said engines and pumps, so contracted for with complainant, made an arrangement with defendants, Hooper & Co., by which the latter were to loan and advance, or procure to be loaned and advanced to them the said Bullock & Co., large sums of money, upon the pledge and collateral security of said bonds and stocks so issued by other water companies; and, in accordance with said arrangement, said Bullock & Co., did pledge and deliver to said Hooper & Co., the said bonds and stocks of the Water Company, and other water companies, and the said Hooper & Co., did loan or advance, or procured it to be done, from time to time, to said Bullock & Co., large sums of money aggregating over $1,000,000; and afterwards, learning that the money they had advanced, upon the faith of said bonds and stocks was not sufficient to complete the same, they declined to make any further advances on account thereof.

Before the refusal of said Hooper & Co. to make such further advances, the defendant, R. D. Wood & Co., had furnished to said Bullock & Co., large quantities of iron pipe, and other materials to be used in the construction of said several water works, and were under contract to deliver certain other large amounts of such iron pipe and materials to be used in the completion of said water works, for and on account of which, said Bullock & Co. were indebted to said Wood & Co., in a large sum of money; and in consideration, and on account thereof, and in view of the fact that said Hooper & Co., had declined to make such further advances, and for the purpose of completing the construction of said water works, in accordance with the contracts of said Bullock & Co., with the water works companies, respectively, and for the purpose of obtaining payment for the money and pipe which they had already furnished and might thereafter furnish, the said Wood & Co., and Hooper & Co., on the 26th day of October, 1887, entered into an agreement in writing with Bullock & Co., and each other, found attached to the bill as Exhibit B., and known and called in the proceedings as the "Tripartite agreement."

In and by the second clause of said agreement, it was provided, that Wood & Co., should, from time to time, pre-

[Wood et al. v. Holly Manufacturing Co.]

sent to Hooper & Co., the detailed applications for money needed for the purposes aforesaid by said Bullock & Co., to pay for labor and materials, to an aggregate amount, not to exceed $200,000, in the proportions hereinafter named at Chester, Greencastle and Mobile, to which application should be attached the four months note of Bullock & Co., the amount therein specified with discount added, whereupon the said Hooper & Co., should pay the said Wood & Co. the amounts so called for, in all, not exceeding said sum of $200,000, and the said Wood & Co. were then, immediately, to give their checks for the same to said Bullock & Co., who were to disburse the same for the purposes specified, and give said Wood & Co. the proper certification and vouchers therefor.

The third clause in said contract provided, that in consideration of said advances of $200,000 to Bullock & Co., and of one dollar to them paid, the said Wood & Co., agreed to procure the completion of said water works at Chester, Mobile and Greencastle, according to the specifications, and clear of all liens ahead of the securities held by William G. Hooper & Co., with the utmost diligence and without delay. According to the agreement also, it was provided, that of the $200,000, to be advanced by Wood & Co., $60.000 was to be applied to the Mobile works.

It is stated in this connection, for the better understanding of the case, not as a part of the pleadings, but as uncontradicted proof in connection with the said tripartite agreement, of the considerations for its execution and the obligation of the parties under it, that there was another agreement between Bullock & Co. and Wood & Co., on the 2nd day of October, 1887, as Wood himself testifies, furnishing a copy of it, in answer to the cross interrogatories propounded to him by complainant, providing, that "*Whereas*, Walter Wood has undertaken to procure the completion of the water works of Chester, Mobile and Greencastle, and to secure such sums of money necessary for the completion thereof, as may be required to be expended upon them; *now this agreement witnesseth*, that in consideration of the said undertaking of Walter Wood, S. R. Bullock & Co. do agree to give to the said Walter Wood, the controlling interest in the construction of the New Chester water works the Bienville Water Supply Company, and the Greencastle Water Company, and to divide in equal portions (half and half) with the said Walter Wood such portion of the bonds of these companies as may revert to S. R. Bullock & Co., under the contract with William G. Hooper & Co., after the

moneys for which such bonds are specifically placed shall be paid with interest, and in the contract with William G. Hooper & Co. and R. D. Wood & Co. are specially provided, together with such expenditures as are necessary to pay the labor required and to furnish the supplies, materials and machinery needed for the completion of said works."

Attached to his deposition, as exhibit No. 1, is a "Statement showing cost of complete work, Mobile, Ala." aggregating $738,995.52, in which occurs the item, "Pumping engines, Holly Manf'g. $50,000," which said Wood in answer to rebutting interrogatory 3rd by complainant, says, was furnished by Bullock & Co. about September, 1887. Harry S. Hooper, in his answer to rebutting interogatory 3rd, makes the same statement as to the time when said statement of Bullock & Co., was made.

On the 9th day of November, 1888, Bullock & Co. executed to defendant Perrot an assignment of their contract with the water company. Perrot received said assignment ment for the benefit of Wood & Co. On the same day—9th November, 1888—Bullock & Co. executed two other assignments directly to Wood & Co., the one, of all their claims arising under the contract with the Water Company, and the second, of all their interest in the stocks and bonds of said company by whomsoever held.

Bullock & Co. were to pay to complainant, according to their contract, $8,333.33 when the first engine was delivered in Mobile, a like sum when said engine had been properly run for 30 days, and a like sum in 60 days thereafter. The same payments were to be made, when the second engine was delivered in Mobile, when it had been properly run for 30 days, and in 60 days thereafter.

Payments were made, as is shown and not disputed, by Bullock & Co. to complainant, on account of the engine and pumps, from July 8, 1887, to March, 1888, inclusive, the sum of $25,000.

On August 11, 1888, Bullock & Co., on a settlement that day had with complainant, acknowledged in writing, that they they owed complainant the sum of $25,000, on contract for pumping engines for Mobile, and $41,637, on contract for pumping engines for Chester, and that they owed these sums, is not in dispute.

On the 26th November, 1888, complainant recovered a judgment, in a court of Pennsylvania, against Bullock & Co. for $67,811.44, of which judgment, $25,437.50, was on account of the balance due on the purchase price of such pumps, engines and connections, with the interest thereon up to the

date of the judgment, which sum is still due and was unpaid when the final decree in the cause was rendered.

Under its said contract, for building and erecting said engines, pumps and connections, from the time they were put in place up to the filing of the bill, complainant claims to have retained the possession and control of said machinery, and then to be in the actual possession and control thereof, and had retained its servant in direct, open and exclusive charge thereof, but had allowed the same to be run under the direction and control of such servant, for the purpose of supplying water to the system, to fulfill contracts made by Bullock & Co., and the Water Works Company, and the same were being so run and used when the bill was filed.

Under an agreement between complainant and the Water Company, after filing the bill, the works were to be operated by the company, without in any manner affecting the *status quo* of the parties.

The special relief sought is an account to ascertain the amount due complainant from Bullock & Co. upon its judgment, on account of the purchase price of such engines and connections, and a sale thereof for the satisfaction of the amount so ascertained; and for that purpose a severance and removal of them, or a sale thereof with authority to the purchaser to so sever and remove, and for general relief. No accounting is sought or relief prayed against any of the defendants, except as specified above.

A demurrer was interposed, on many grounds, but it was overruled by the chancellor. On final hearing, on pleading and proof, a decree was rendered in favor of complainant, in accordance with the prayer of the bill.

The appeal is prosecuted to reverse the decree overruling the demurrer and the final decree.

OVERALL & BESTER, for appellants, presented and elaborated the following points: 1. The Holly Company reserved a lien on the property. This is in effect a mortgage. It had to be recorded to make it good, or give it priority over *bona fide* purchasers, without notice. Such lien was and is good as against Bullock & Co., but not against the water works company, nor the trustees of Bucknell, nor Hooper & Co., nor R. D. Wood & Co.—*The Fairbank, Morse Co. v. Eureka,* 67 Ala. 109; *Sumner v. Woods,* 67 Ala. 139; Code of 1886, §§ 1797, 1806, 1807, 1814; *Hervy v. R. I. Locomotive Works,* 93 U. S. 664. 2. One of the pumps described as pump No. 1 was fully paid for by Bullock & Co. before the filing of the bill, and this pump No. 1 is relieved from all

[Wood et al. v. Holly Manufacturing Co.]

claims or liens of the Holly Company. 3. Bucknell and Hooper & Co. were and are *bona fide* purchasers without notice. Bucknell and Hooper & Co. made advances to Bullock & Co. on these bonds as collateral security before they or any of them had any notice of Holly Company's lien or equity. Wood & Co. to a certain extent stand in the same position. These bonds and the mortgage protecting them have priority over Holly's lien or equity.—*Dunham v. Railway Co.*, 1 Wall. 254; *Porter v. Pittsburg Steel Co.*, 122 U. S. 267, 282; *Galveston R. R. Co. v. Coudrey,* 11 Wall. 459; *Heryford v. Davis*, 102 U. S. 235; *Richardson v. Copeland,* 6 Gray (Mass.) 536; *Kneeland v. Lawrence*, 140 U. S. 209; *Central Trust Co. v. Hiawassee Co.*, 1 U. S. Ct. of App. 116; *Clary v. Owen,* 15 Gray (Mass.) 522; *Tillman v. DeLacey,* 80 Ala. 103; *Pierce v. George,* 108 Mass. 78; *Quinby v. Manhatten &c. Co.*, 24 N. J. Eq. 260; *Noble v. Bosworth,* 19 Pick. 314; 32 New Hamp. 484. 4. Bullock & Co. were fully paid up by the Bienville Water Supply Company under its contract, and if Bullock & Co. did not pay the Holly Company, the Bienville Company, or the mortgage bondholders, ought not to suffer or be called upon to pay it, or to lose a part of their property covered by the mortgage, to-wit, the pumps. 5. The pumps were and are necessary for the running of the water works, and for providing the public with water, and they can not be removed without stopping the public works, and Holly & Co. knew this when they made the contract and when the pumps were erected. 6. The Holly Company did not retain and keep possession of the pumps, but as there is a conflict of testimony on this point, even if it did so retain possession, yet this was not notice to the bondholders, or even such notice as would put them on enquiry. They were not charged with such notice.—Wade on Notice, §§ 44, 288, 291; *Mecham v. Williams*, 48 Penn. St. Rep. 238; *Brown v. Valkenning,* 64 N. Y. 76; *Harkness v. Russell,* 118 U. S. 663. 7. The second engine or pump was erected after March 21st, 1888, that is, after the date of the deed from Bullock and wife to the Bienville Company of the land on which the pump was erected.

T. A. HAMILTON, for the appellants, presented and elaborated the following points among others:—1. The demurrers to the bill of complaint should have been sustained upon the ground that the pumping engines must be regarded as fixtures attached with the knowledge and consent of the Holly Manufacturing Company to real estate and property covered by the mortgage from the Bienville Company to the Farmers'

Loan and Trust Company for the benefit of the bondholders who advanced their money upon the faith of the security afforded by that mortgage ; and much more clearly is this the case under the evidence in the cause showing the lack of notice of any kind to Hooper & Co. and other defendants of the existence of any such lien as is claimed by the Holly Company.—See 26 Ala. 497-8 ; 80 Ala. 105 and 106, and citations ; Ewell Fixtures, 9 note and 286 and 281 ; 1 Jones Mort. § 436 ; 36 N. J. Eq. R. 455 and citations ; 2 Smith Leading Cases, 249-250 m. p.(t. p. 202-205); Hare & Wall, notes 7 Am. ed. citing many cases ; 23 N. E. R. 327, 331, and citations ; 19 Atl. R. 540-541 ; 4 Metc. R. (Mass.) 314 ; 123 Mass. R. 47, 49 ; 27 Am. R. 312 ; 10 N. W. R. 842 ; 97 Mass. R. 279-284 ; 122 U. S. R. 279, 282-3 ; 1 Wall. R. 254, 265-8 ; 23 How R. 130 ; 11 Wall. R. 459, 464-5, 480, 482 ; 21 Wall. R. 440 ; 12 Wall. R. 362, 365 ; 132 U. S. R. 68, 74-75 ; 133 U. S. R. 539 ; 6 Gray R. 5.6, 538 ; 15 Gray R. 522, 524-5 ; 108 Mass. R. 78-83 ; 32 N. H. R. 484 (4 head note) 521-2 ; 99 U. S. R. 251 ; 42 N. J. Eq. 218.

Second. The contract in this case a copy of which is attached to the bill of complaint as Exhibit A, does not show under the laws of Alabama a case of a *conditional* sale of the pumps referred to therein, but a case where the title to the pumps must be held to have been agreed to be passed from the Holly Company to Bullock & Co., reserving only a lien upon them for the protection of the Holly Company. See 118 U. S. R. 663 *et seq.* 679 ; 139 U. S. R. 276-7 ; 33 Ala. R. 534 (fourth head note); 76 Ala. 427 (second head note); 102 U. S. R. 235 (second head note) and 246; 67 Ala. R. 112 and 142; 91 A. R. 504; 93 Ala. 283; 89 Ala. 630, 42 N. J. Eq. R. 231; Jones Chat. Mort. § 30. Third. The most which the Holly Company can properly claim to have retained, was a *lien or equitable mortgage* upon the pumps, and this leaves open only the question as between the Holly Company and Hooper & Co., and others advancing money to Bullock & Co., or upon the bonds and mortgage of the Bienville Company which of them was entitled to the superior equity. Fourth. The Alabama statute required in such a case, in order that the Holly Company should have maintained its priority, that it should in a case like this where the property was brought to Alabama from another State have placed the paper showing its lien on record in the Probate Court of Mobile county within four months after it came into the State. See Alabama Code § 1807. Fifth. It may be that giving notice to parties in interest of the existence of the alleged lien of the complainant below in

VOL. C.

[Wood et al. v. Holly Manufacturing Co.]

advance of the accrual of their interest would have answered as a substitute for that record, and that actual uninterrupted and plain and obvious continuance of possession of the pumps at all times afterwards would have operated as such notice, but nothing less than this would do, and we insist that neither one of these things is shown in this case. Sixth. The burden of proving such notice was upon the complainant below. Seventh. The allegation of the bill (see its fifteenth paragraph), is that the right or interest of each of the defendants below was acquired with notice of complainants' lien. This would be required by the law of the case to uphold any superiority of right on the part of the appellee, but the evidence in the case fails to show that any such notice was given to either R. D. Wood & Co. or W. G. Hooper & Co., and particularly to the latter until after their rights had accrued. Eighth. So far as it may be claimed that there was any such possession of the pumps retained by the Holly Company or its agent as would have been necessary to constitute notice to Wood & Co. and Hooper & Co. of the alleged lien on the part of the Holly Company the law requires that any such possession in order to constitute notice to parties must be unequivocal and such as must have been plainly obvious so as to indicate plainly to the observer that the possession was that of the Holly Company and not of the Bienville Water Supply Company or anybody else. See Wade Notice, § 291; 3 Pick R. 354; 85 Ala. R. 188, 587; 87 Ala. R. 237; 91 Ib. 359. And this is plainly recognized by the allegations of the sixth paragraph of the bill that the complainant always kept such open and notorious possession. No such possession on the part of the appellee is shown by the evidence in the cause. Ninth. So far as the pumping engine is concerned which was first erected, it was not only erected by the Holly Company as a part of the Bienville Water Works, and with full knowledge that it would be a necessary part of the said water works system, but it was also done with full knowledge of the existence of the mortgage upon all property of said Bienville Water Supply Company then owned or thereafter acquired, to protect parties advancing to Bullock & Co. for the erection of said water works and with knowledge also that some of the appellants were advancing large sums of money upon the security afforded by that mortgage. It was also the fact that before the said pump was placed in the pump house of the Bienville Company and attached to the Bienville water works the lot of land upon which said pump house and pump were placed had been fully paid for

by the Bienville Company whereby the Bienville Company acquired a perfect equity to the said land and became entitled to a conveyance of the legal title thereto from the said Bullock & Co. (see 14 A. R. 371 and 15 A. R. 848). Thereupon if not before the mortgage to the Farmers' Loan and Trust Company attached to the land and pump house and engines connected with it. See 1 Jones Mortgage § 138, and 134 U. S. R. 296, 305.) Not only then did the Holly Company fail to record its alleged lien as required by the laws of Alabama, but it failed also to give notice to the first mortgage bondholders of what is now claimed to have been a lien in its favor upon the pumps. Then on March 21, 1888, Bullock & Co. conveyed to Bienville Company the legal title to the lot on which the Bienville Company's pumping house stood and in which said pump No. 1 had been erected. On March 27, 1888, all the purchase money of that pump having been paid by Bullock & Co. (no doubt with funds derived from Hooper & Co.) except about $8,300, Bullock & Co. telegraphed to the Holly Company to the effect that they would pay that balance with money which they had received for that purpose provided it should be accepted by the Holly Company as a final payment on that pump, and not otherwise. The Holly Company replied agreeing it should be so accepted and thereupon the money was paid. The evidence does not perhaps show very distinctly and positively from whom this money was received by Bullock & Co., but would seem it must have been from Hooper & Co. Thus it will be seen by reference to C. G. Hildreth's letter of March 30, 1888, to the Holly Company it is plainly to be inferred that at least $6,300 of the 8,300 used to make the last payment on pump No. 1 came from the Philadelphia parties. It would be, to say the least of it, inequitable now to allow that any priority of lien upon this pump existed after this in favor of the Holly Company and against these appellants, and especially Hooper & Co. See also 84 N. Y. R. 182, citing 6 Ad. and El. 474; 30 N. Y. 226; see also 91 A. R. 569 et seq. Tenth. As to the pump last erected not only had the pumping house and ground on which it stood been fully paid for by the Bienville Company to Bullock & Co. before the pump was attached to the water works but the legal title to the property on which the pumping house stood was conveyed by Bullock & Co. to the Bienville Co. while the pumping engine was being erected and long before it was finished. Eleventh. Upon the evidence in the cause the proper legal conclusion is and should have been by the court below that the right of the said complainant below to

[Wood et al. v. Holly Manufacturing Co.]

subject the pump first erected to its claim against Bullock & Co. was inferior to the rights of the defendants. Twelfth. Upon the evidence in the cause, the proper legal conclusion is and should have been by the court below that the right of the said complainant below to subject the pump last erected to its claim against Bullock & Co. was inferior to the rights of the defendants. Thirteenth. Upon the evidence properly to be considered in the case the decree of the court below should have been that the bill should be dismissed at the costs of the complainant below.

R. H. CLARKE, for the appellee.—The question to be determined at the outset is, what, as between complainant and Bullock & Co., are the rights of the former under the construction contract between them? If they originally had a lien upon the pumping engines and connections, to what extent would the same still be in force as against Bullock & Co. were there no other parties in interest? That being settled, the rights of intervening third parties become easier of determination. Character of security.—The contract expressly reserved a lien, with the privilege of possession. The lien was not dependent upon possession; had complainant surrendered the property, its security would have been in the nature of an equitable mortgage. Whatever may have been the original signification of the word *lien*, it has acquired a much more extended meaning when used in a contract, and whenever it appears that the parties thereby intended to make some particular property security for a debt, the contract will be construed and enforced as an equitable mortgage, though the lienor has parted with possession.—3 Pom. Eq. Jur. Sec. 1233-4-5-6-7; *Donald & Co. v. Hewitt*, 33 Ala. 534; *Newlin et als. v. McAfee*, 64 Ala. 357; *Butts v. Broughton*, 72 Ala. 295; *Jackson et als. v. Rutherford*, 73 Ala. 155; *Kyle v. Bellenger*, 79 Ala. 516; *Fletcher v. Morey*, 2 Story, 555; *Flagg v. Man*, 2 Sum. 486; *Chase v. Peck*, 21 N. Y. 581; *Gilson v. Gilson*, 2 Allen, 115; *Whiting v. Eichelberger*, 16 Iowa, 422; *Ketchum v. St. Louis*, 101 U. S. 306, 316-7. It is a lien in the nature of an equitable mortgage, enforceable alone in equity.—*Jones v. Anderson*, 76 Ala. 431. If not an equitable mortgage, it is simply because complainant has exercised its privilege of retaining possession in itself, possession in the debtor being an essential element of an equitable mortgage.—1 Pom. Eq. Jur. sec. 165; 3 *Ib.* sec. 1233; *Jackson v. Rutherford*, 73 Ala. 155-7; *Ala. St. B'k. v. Barnes*, 81 Ala. 610; *Campbell v. Woodstock Iron Co.*, 81 Ala. 357. The position of complainant can not be

22

weakened by its retention of possession. It is rather that of a mortgagee at law, in possession of the mortgaged property. The contract is almost identical with that construed in *Gregory v. Morris*, 96 U. S. 619, held to create "a charge in the nature of a mortgage," p. 62.3. It will be observed that the contract in the case cited was that the agent of Morris should "go along with and retain possesion of the cattle," p. 619. See also *Dunning v. Stearns*, 9 Barb. (N. Y.) 630. The agreement between complainant and Bullock & Co. clearly contemplated that the annexation of the chattles to the realty should be conditional; it was not intended on either side that they should become a permanent accession to the freehold, converted into a part of it, until paid for; otherwise the lien granted would have been incapable of enforcement. Such intention being lacking, the chattles did not become fixtures.—*Tillman v. DeLacy*, 80 Ala. 103; s. c., 83 Ala. 157; *Quinby v. Manhatten C. & C. Co.*, 24 N. J. Eq. 260; *Teaff v. Hewitt*, 1 Ohio St. 511; *Harris v. Powers*, 57 Ala. 143; *Vann v. Lunsford*, 91 Ala. 576; *Ware v. Hamilton*, 92 Ala. 151. There was nothing in the way of Bullock & Co. binding themselves by such an agreement.—Ewell on Fixtures, 66 et seq. 316, et seq.; *Taft v. Stetson*, 117 Mass. 471. The condition under which they were sold, attached to the title, and the property was bound to its performance.—*Marks v. Cowles*, 53 Ala. 499, 502. Complainant has, therefore, as to Bullock & Co. an equitable mortgage upon the property if held by the court not to have retained possession. If it held possession, then it is a mortgagee in possession. In either aspect, it is entitled to the assistance of a court of equity to ascertain and enforce its lien.—Jones on Chattel Mortgages, sec. 776 et seq.; 3 Pom. Eq. Jur., sec. 1230; *Denby v. Mellgrew*, 53 Ala. 147. So far as Bullock & Co. are concerned, complainant, therefore, has a well defined lien which a court of equity will enforce, unless the security has been forfeited by conditions outside the original contract. Seven grounds of defense were insisted upon for all the defendants in brief of counsel in the court below. Of these, two are as available to Bullock & Co. as to the defendants holding under them, viz: 1. That pump No. 1 was fully paid for by them before the filing of the bill, and was thereby relieved from complainant's lien; 2nd, that the pumps are necessary for a public purpose and cannot be removed without stopping works. Upon the first point; release of lien upon pump No. 1.—Unquestionably, on 27th March, 1888, Bullock & Co. made a payment of $8,333.33 to complainant, stipulating that it should be applied as final payment on the

[Wood et al. v. Holly Manufacturing Co.]

first pumping engine, and such stipulation was formally agreed to by complainant; and the payment so applied. Defendants insist upon this fact as operating a release of that engine from the lien. Not a word was said in the stipulation, or in its acceptance, as to such release, so that, if released, it is because the lien was originally fastened upon it only for the security of its own price. The bare reading of the contract, Exhibit B to the bill, original Exhibit 12 to testimony of Bullock and Hildreth, negative that proposition. Indeed the contract itself, while creating a lien on both engines for the whole debt, clearly looked to a separate payment of the price of each: "$8,333.33 when the first engine was delivered in Mobile; $8,333.33 when the first engine has been properly run thirty days, and $8,333.33 in sixty days thereafter; $8,333.33 when the second engine is delivered in Mobile; $8,333.33 when the second engine has been properly run thirty days; $8,333.33 in sixty days thereafter." See opinion of Chancellor Coleman filed with decree overruling the demurrers in the case. That the parties did not intend the release claimed, is clearly evidenced. See Exhibits 15, 16 and 17 to testimony of Bullock and Hildreth. Upon the Second Point; Loss of lien by use of Engines in Public Works.—This defense was presented by some of the demurrers to the bill. If the principle advanced be correct, no valid mortgage or other lien can be placed upon property used to supply a want of the public, such as railroads, gas works and water works, since an enforcement of the lien of a mortgage necessarily involves a diversion of the property from public use at the will of the purchaser. No law compels him to operate the property after purchase. He may take up rails from the track of a railroad and sell off rolling stock. The contention assails the validity of the mortgage made by the Bienville Co. under which some of the defendants claim. How can it be foreclosed if the position is tenable? To deny the enforcement of this lien because of the interest of the public in the operation of the system, would be to the prejudice of public policy. Such works are constructed only upon credit, which could not be obtained if the creditor is to be robbed of his security. No attempt, upon the ground of public policy, has ever been made to carry so far the doctrine of exemption of the property of public corporations from seizure under execution, or for the enforcement of general liens.—*Hill v. L. C. & M. R. R. Co.*, 11 Wis. 214; Phillips on Mech. Liens, § 182. A denial of the specific lien for the price upon this ground, would be the appropriation of private property for public use with-

[Wood et al. v. Holly Manufacturing Co.]

out compensation forbidden by the constitution of the State. The testimony so fully sustains the allegations of the bill as to Bullock & Co. that the declaration of the chancellor in his opinion overruling the demurrers holds good upon the proof: "If this suit was between complainants and Bullock & Co. only, there would be no room for controversy." Counsel for defendants admit this in their brief: "Such lien was and is good as against Bullock & Co."—P. 3, par. "first" of brief. Rights of Third Parties.—It only remains, therefore, to inquire what third parties have acquired rights, the nature of such rights and their effect upon complainant's lien. Hooper & Co., the successors of Bucknell, and Wood & Co. are holders of bonds, the security ↑ of which will be diminished by the enforcement of the lien. The Bienville Water Supply Company is the principal debtor upon the bonds and is the mortgagor of the real estate to which the encumbered property is attached. It is unnecessary to discuss the situation of Perrot and the Farmers' Loan & Trust Company since decrees *pro confesso* stand against them. The defenses set up for these parties, as distinct from Bullock & Co., are: 1. That the lien is void as against each of them, because not recorded. 2. That Bucknell & Co., Hooper & Co. and Wood & Co. are *bona fide* purchasers without notice. 3. That Bullock & Co. were fully paid up by the Water Co. 4. That complainant did not retain possession of the pumps, and that the bondholders had no notice of complainant's lien. 5. That the second pump was erected after Bullock & Co. had conveyed to the Water Co. the land to which it was attached. I have already discussed two of the points made by the brief, and what has been said is applicable to them as defenses for the third parties. The first, second and fourth points really set up the same defense, a *bona fide* purchaser without notice, the first and fourth merely alleging want of notice. *Bona fide* Purchaser without Notice.—As to the Bienville Water Supply Company it is hardly necessary to discuss this point as to this defendant. It does not attempt to set the defense up for itself in its answer, though suggesting it for unknown purchasers of mortgage bonds. See end of 2d and 4th par. of its answer. In the extended discussion of this point in the brief for defendants, it is set up only for Bucknell and Hooper & Co. See pp. 13 and 22 of brief. As to the other defendants, defense of *bona fide* purchase for value without notice, can not be considered as to Hooper & Co., Bucknell or Wood & Co., because not set up by their pleadings.—*Hooper, Adm'r, v. Strahan,* 71 Ala. 75, 79–80; *May v.*

[Wood et al. v. Holly Manufacturing Co.]

*Wilkinson,* 76 Ala. 543; *Gresham v. Ware,* 79 Ala. 192, 198; *Ledbetter v. Walker,* 31 Ala. 175; *Wells v. Morrow,* 38 Ala. 125; *Boone v. Chiles,* 10 Pet. 177, 211. Two essentials are necessary to the claim: 1. That the pumping engines had become fixtures, a part of the real estate covered by the mortgage of the Bienville Water Co. 2. That these defendants are *bona fide* purchasers of said realty, for value, without notice. It is not sufficient to aver and prove a purchase of the bonds secured by the mortgage. This is not a question of protection as to the *bonds.* They may well be entitled to protection against secret trusts sought to be fastened on the bonds, but not to equities attached to the *lands conveyed to secure the bonds.* It is true that, claiming under a conveyance made by way of security, they must show themselves creditors of a class bringing them within the category of purchasers; therefore, it was proper for them to state their ownership of the bonds; they do that insufficiently, since the court can not say from their answers that they parted with value at the time they received the bonds, and upon the faith of the transfer of the bonds to them.—*Thames v. Rembert,* 63 Ala. 561, 572. But even if their allegations had been sufficient as to their ownership of the bonds, they must have gone further and alleged ownership of the land, and that rested upon the mortgage. It was therefore necessary for them to allege that they (or the trustee, who, as to this, is identical with them) took the mortgage "from one in actual or constructive possession, who was seized, or claimed to be seized of the legal title, at the same time briefly setting out substantially the contents of the deed of purchase (mortgage) with date, consideration and parties."—*Hooper v. Strahan ,supra,* p. 79. Complainant sets up no equity against the bonds, but against a part of the property claimed to be covered by the mortgage made to secure the bonds. The answers of these defendants set up that they are *bona fide* purchasers of the *bonds* and are wholly defective in that respect, since they merely assert the conclusion, without stating the facts upon which the court may judge whether the conclusion is well founded. But the answers are utterly silent as to the material facts necessary to uphold the claim of *bona fide* purchase of the *realty* to which the engines are attached.—*Gresham v. Ware* 79 Ala. 192, 198; *Boone v. Chiles,* 10 Pet., 177, 209, 211, 212. Proof as to *bona fide* purchase.—The evidence wholly fails to sustain defence of *bona fide* purchase.—*May v. Wilkinson,* 76 Ala. 542, 545-6. The legal title must be acquired. —Marshall, C. J. in Vattier v. Hinde, 7 Pet. 254, 271; 1 Br.

Dig. p. 718 section 1134 ; *Hooper v. Strahan, supra*; *Shorter v. Fraser* 64 Ala. 74; *Craft v. Russell*, 67 Ala. 9. When the mortgage was made, the Water Co. had not the legal title to the land to which the engines are attached. The claim rests on the extension of the mortgage to "after acquired property." A mortgage of after acquired property does not pass the legal title to it; it is only an equitable mortgage, an agreement to make a further mortgage as the property is acquired.—Jones on R. R. Sec. 122 ; 1 Jones on Mort. 152 *et seq.*; Jones on Chat. Mort. 170 ; Herman on Chat. Mort. sec. 46 ; 2 Kent 468; *Anderson v. Howard*, 49 Ga. 313; *Otis v. Sill*, 8 Barb. 102 ; *Bnrns v. Campbell*, 71 Ala. 271-288; *Ala. State Bank v Barnes*, 82 Ala. 107, 619; *Paden v. Bellinger*, 87 Ala. 575. So soon as the property is acquired, the mortgagor becomes a trustee holding the legal title for the benefit of the mortgagee.—*Mayer v. Taylor*, 69 Ala. 403. The mortgagee of after acquired property, never having the legal title is not a purchaser in the sense of the word as used in this connection, and takes the after acquired realty in its condition at the time it was acquired by the mortgagor, subject to existing liens upon it, even though created subsequent to the execution of the mortgage.—Jones on R. R. Sec. 142; 1 Jones on Mort. 158; *Hooper v. S. & M. Ry. Co.*, 69 Ala. 529-539; 81 Ala. 81; *U. S. v. N. O. R.* 12 Wall. 362, 364-5; *Fosdick v Schall*, 99 U. S. 235-251; *Meyer v Car Co.*, 102 U. S. 1-10; *Central T. Co. v. Kneeland*, 138 U. S. 414, 423; 2 Story 1228. The word "purchaser" is not used here in the popular sense of *buyer* of the absolute property, but in the technical signification of one, who, in good faith, without notice, parts with value, or changes his position for the worse, under the belief that he is acquiring the legal estate, whether absolutely or as security.—*Thames v. Rembert*, 63 Ala. 561, 563-571. The cases cited for defendants upon this point, of which *Porter v. P. S. Co.*, 122 U. S. 267, 282, is the leading one, all rest upon a different principle. In each of them the lien set up against the mortgage was founded on a contract made with the mortgagor after the execution of the mortgage ; this one is upon a contract with Bullock & Co., the owners of the land, before the mortgage attached to it even in equity. The distinction is clearly stated in *Williamson v. N. J. S. R. R. Co.* 29 N. J. Eq., 311, 317. It is also as distinctly stated in the opinion of Chancellor Coleman overruling the demurrers in this cause. At what time was the relation of these defendants, the bondholders, to the property fixed so that it must be determined that they then became purchasers for value, entitled to pro-

[Wood et al. v. Holly Manufacturing Co.]

tection, or then acquired their interest subordinate to complainant's lien? Clearly, when they acquired the bonds, for it was then if at all, that they parted with the valuable consideration essential to this defence. If their vendor, the Water Co. then had not title to the land, they cannot be said to have parted with their money upon the faith of his being seized in fee, upon the faith that they were getting a perfect legal title, the very essence of the claim of this defence to a favorable consideration by a court of equity. The subsequent acquisition of the legal title by the mortgagor, while working an estoppel as between it and them, could not avail them as against third parties having secret equities. Having bought subject to such equities, they could not get rid of them. The answers of the defendants show that Hooper & Co. and Bucknell acquired the bonds prior to October 26th, 1887, and Wood & Co. their rights therein on that day.—Par. 2 Ans. Hooper & Co. and Bucknell; par. 2 Ans. Wood & Co. The land was conveyed by B. & Co. to the Water Co. in March, 1888. Therefore, not only was the mortgage made when the mortgagor was neither seized in fee of the realty, nor pretended to be so seized, but all the bonds were acquired by the defendants under the same condition of facts. Not purchasers because the mortgagor took only a quit claim deed to the property. A copy of the deed made by Bullock & Co. to the Bienville Water Co. for the land on which the engines are, is attached to the "Agreement as to Documentary Testimony", par. 10, Exhibit H. It conveys by words which would create a statutory warranty but for the express stipulation against that at its close. It is, therefore, only a quit-claim deed. *Derrick v. Brown*, 66 Ala. 162. That passed only such interest as Bullock & Co. had, subject to all liens and encumbrances. Under it the Water Company was precluded from claiming to be a *bona fide* purchaser for value. *Derrick v. Brown, supra*; *Smith v. Branch Bank*, 21 Ala. 125, 134-5; *Smith v. Perry*, 56 Ala. 266, 269; *May v. LeClaire*; 11 Wall. 217; *Alexander v. Roderiguez*, 12 Wall. 323; *Baker v. Humphrey*, 101 U. S. 494; *McMillan v. Rushing*, 80 Ala. 402 and 407.

A purchaser from the Water Company was charged with notice that it held title subject to all existing equities, and hence could convey only such title. 3 Br. Dig., p. 810, 164-5-6-7. Defendants are not *bona fide* purchasers of the property in contention hence it is subject to complainant's lien, even though they had no notice. As to notice to the Bienville Water Supply Company, and as to R. D. Wood & Co. and Wm. G. Hooper & Co. in paragraph third of their

[Wood et al. v. Holly Manufacturing Co.]

agreement with Samuel R. Bullock & Co. of 26th October, 1887, set forth as Exhibit "B" to the bill of complaint and admitted by their answers—R. D. Wood & Co. agreed to procure the completion of the Mobile Water Work's "clear of all liens ahead of the securities held by William H. Hooper & Co." which securities are stated in the preamble of the agreement to include certain of the bonds and stocks of the Water Company. It thus appears that both firms knew of some prior lien then existing. It nowhere appears, that there was any lien other than that set up in the bill, and neither Wood & Co. nor Hooper & Co. attempted to explain that stipulation. See testimony of Bullock in answer to 22nd int. in chief, that he furnished to Wood & Co. a copy of his contract with the Holly Co. prior to the execution of the tripartite agreement of Oct. 26th, 1887, above referred to. Also testimony of Chas. G. Hildreth, answer to 25th int. in chief. Bullock & Co. fully paid. As to the defendants, 3rd point.—That Bullock & Co. were fully paid by the Water Company, and if they did not pay complainant the property of the bond-holders ought not to be held liable for the debt. Bullock & Co. granted a lien to the Holly Co. to secure a debt, and then conveyed to the Bienville Co. which in turn mortgaged to third parties. To set up that a payment discharged the lien as to such third parties, is an admission that the lien was good as to them until such payment was made. To operate as a discharge as to them it must have been of such a character as to discharge all. It is not denied that the Bienville Co. had notice of the Holly Co's lien. This defence is not based upon want of notice, but broadly asserts the proposition that a purchaser from a mortgagor discharges the lien by payment to him without the privity of the mortgagee,—a death blow to the security of all such liens, if sound. Second pump erected after conveyance. As to the defendants, 5th point.—That the second pump was erected after Bullock & Co. had conveyed to the Water Co. the land to which it was attached. Admitting, for the sake of argument that both pumps became fixtures, when the realty was conveyed to the Water Company, the first engine with its connections had been annexed to it; the annexation of the second had commenced, was then going on, and was soon thereafter completed. This defence is made as to the second engine, pump and connections, as if they stand upon a different footing, by reason of the completion of their annexation after the conveyance. On the 21st, March 1883, complainant had, as against Bullock & Co. an equity to proceed with the completion of the contract,

VOL. C.

which a Court of Chancery would have recognized. As has been demonstrated the Water Co. and its mortgagees acquired only such rights in the land as Bullock & Co. had, subject to all equities which burdened it in their hands, and therefore to this equity of complainant. The rights and remedies of complainant are, therefore, the same as to both sets of engines, pumps and connections; both were annexed before the conveyance of the realty to the Water Company, if either was. This point was passed upon by Chancellor Coleman, in his decree on the demurrers. Pumps not fixtures.—The pumps were not fixtures because the contract between Bullock & Co. and the Holly Co. clearly stipulated against that until they should be paid for. Tillman V. De-Lacey, 80 Ala. 108. The Holly Manufacturing Company, *et al.* in the U. S. Circuit Court, for Eastern District of Pennsylvania, to be found at the end of volume, herewith submitted.

HARALSON, J.—1. In the opinion of the Chancellor, (Coleman) it was very pertinently asked,—"Were complainants and Samuel R. Bullock authorized to make the contract of which Exhibit A. is a copy; was it a legal contract, and did it give complainants a lien upon the engines and connections as a security for the payment of the whole debt secured?" Answering, it was said,—"There can be no question of this. They were the absolute owners of the property, the subject of contract, were under no disabilities to make it, and were authorized and capable of making such terms and provisions as they saw proper. If this suit was between complainants and Bullock & Co. only, there would be no room for controversy. Can Samuel R. Bullock & Co. by any voluntary act on their part, amend and destroy the security thus given without the consent of the other party, or without some fault or negligence of the other?"

Let us treat the case, for the time, therefore, as if it were between complainant and Bullock & Co., only, and the rights of intervening third parties become of easier solution.

2. The contract expressly reserved a lien on the engine, pumps and connections with the privilege of possession. The character of this lien has been the subject of much discussion, and is well settled in the books. There is but a narrow distinction so far as the security of the debt and its enforcement in a court of equity goes between a mortgage, as such, and what is denominated simply, an equitable lien or mortgage. A lien to be of the former class, must arise where the possession remains with the debtor. It is some-

thing more than a mere lien, or security. As said by this court in *Jackson v. Rutherford*, 73 Ala. 157, "No technical words are necessary to constitute a mortgage, which would be good at law, any more than in equity. Any words would be sufficient which serve to show a *transfer* of the mortgaged property as security for a debt. Whatever language may be used, if it shows that the parties intended a sale of the chattels as security, the instrument will be construed to be a mortgage."—Jones on Chat. Mort., §§ 1, 8, 9. The court adds, "In some of our decisions expressions are used which seem to confound the distinction between legal and equitable mortgages, but there is no case in our reports which really conflicts with the principles declared in this decision."

Again it was said in *Kyle v. Bellinger*, 79 Ala. 516, 521, that "A lien created by contract, and not sufficient as a legal mortgage, will generally be regarded as in the nature of an equitable mortgage. The form of the contract is immaterial. Though a lien may not be expressed in terms, equity will imply a security from the nature of the transaction, and give it effect as such, in furtherance of the agreement of the parties, if there appears an intention to create a security. Says Judge Story, "If the transaction resolves itself into a security, whatever may be its form, it is in equity a mortgage." Neither is any particular form of words necessary to the reservation of a lien. Any words which manifest an intention to retain one, will be sufficient in a court of equity."

An equitable mortgage, or lien in the nature of a mortgage, is enforceable alone in equity, and a legal mortgage, at law or in equity.—*Newton v. McAfee*, 64 Ala. 357; *Jones v. Anderson*, 77 Ala. 427, 431; *Ala. State Bank v. Barnes*, 82 Ala. 607, 620; *Donald v. Hewett*, 33 Ala. 534; 3 Pom. Eq. J., §§ 1233-1237; *Gregory v. Morris*, 96 U. S. 619.

It has been suggested in argument against the idea of a retention of a lien of any character by the complainant which could be made effective as a security, that the engines, pumps and their connections became fixtures to the freehold and incorporated into the system of the Water Company, and could not be removed; but the bill alleges and the proofs show, that the annexation of the chattels to the realty, were, by the agreement, conditional. It was not intended, on either side, that they should become permanent accessions to the land—converted into a part of it—until two conditions were complied with, viz. (1) that the engines, after being attached, as they were, should be subjected to a thirty day test, to ascertain if they came up to the guarantee

[Wood et al. v. Holly Manufacturing Co.]

of their builders, which they were required to do, before
Bullock & Co. were bound to accept them; and (2) not be-
fore they were paid for if they were found to be satisfactory.
If they had proved to be failures, they would have had to
be removed; and so, if not paid for, they might also, accord-
ing to the agreement, be removed, if necessary in the enforce-
ment of the lien reserved for their purchase price; other-
wise, the contract of the parties would be rendered nugatory.

One of the requisites to convert a chattel into a part of
the realty, is that it must be the intention of the party mak-
ing the annexation, to make a permanent accession to the
freehold, which will be implied, if he erects such structures
as ordinarily attach to the land, without agreement to the
contrary with the owner. But, reservation of the right by
agreement of the parties is sufficient to remove a house, or
machinery or other like erections, which in their removal
do not materially injure the premises.—*Harris v. Powers*,
57 Ala. 139, 143; *Tillman v. Delacy*, 80 Ala. 103; *Vann v.
Lunsford*, 91 Ala. 576; *Ware v. Hamilton*, 92 Ala. 145, 151;
Ewell on Fixtures, §§ 66, 316.

4. It has been made to appear, therefore, that so far as
complainant and Bullock & Co. are concerned, there was no
legal impediment in the way of their entering into a contract;
that there was nothing in the condition of the property and
the character of the lien reserved which forbade them to
contract as they did, and that, whether, as a matter of fact,
the possession of the property was retained by complainant
or delivered to Bullock & Co., makes no difference in the
security, since a court of equity will enforce it in the one
case as well as in the other, unless the security has been
forfeited by transactions outside of the conditions in the
original contract, which defendants contend has been done
as to Bullock & Co. on two grounds, which we consider.

5. It is contended that pump No. 1, was fully paid for
before the filing of the bill, and was therefore relieved
of complainant's lien; and that the pumps are necessary
for public purposes, and can not be removed without stopping
public works.

It is not denied that $25,000, of the $50,000 agreed to be
paid for both engines, has been paid; that as the money
was paid in instalments, as it was agreed it should be paid,
it went in payment of the first work done, and as done, which
was on pump 1, and that the sums so paid were in full of
the cost price of that pump. But, while this is clear, yet
not a word appears to have been said, when any or all the
payments were made, that they should operate as a release

of the lien on that pump, for the price of the two; and the contract does not provide for a lien on each pump, separately, for its own price, and not for the price of both; but it is, on the other hand, expressly stipulated, "that the party of the second part (complainant) shall have a lien *on all of said engines and connections,* . . until the *whole amount* of the purchase price of *said engines and connections* have been fully paid." The lien was upon the whole, and not upon a part only, and no part of the security has been released. The construction contended for, would go to the extent of holding, that where a lien is given in writing on several articles sold, to secure the aggregate price of all, it operates only as a lien upon each article sold for its own price, which we are unable to sanction.

6. The second point mentioned, that of the forfeiture or loss of the lien, on account of the public inconvenience, is equally untenable. Public policy favors the enforcement of debts and the sustaining of credit, public as well as private. Water works, railroads, gas works, and other like enterprises, in which the public are so largely interested, are constructed mainly upon credit, which could not be obtained, if a lien or mortgage given to secure the credit were denied enforcement by the courts, because the public would be inconvienced by its assertion. Such a doctrine would be tantamount to the appropriation of private property to public use, without compensation, which is forbidden by the Constitution. If the principle were tenable, it would apply with as much force to the general mortgage given by the water company to secure it bonds, under which some of these defendants are claiming as against the complainant's lien, for its foreclosure might work all the public inconvenience that the enforcement of complainant's lien could possibly do.—*Hill v. L. C. & M. R. R. Co.,* 11 Wis. 214; Phil. on Mch. Liens, § 182.

7. From what has gone before, we may the better enquire and understand what rights third parties might have acquired, the nature of such rights and their effect upon complainant's lien.

From the statement of facts, it has appeared that the Water Company is the principal debtor on the bonds, and is the mortgagor of the real estate to which the engines are said to be attached as fixtures. Hooper & Co., who, as agents, advanced the money for Bullock, and who are his successors, and Wood & Co. are holders of the bonds, the security of which will be diminished by the enforcement of complainant's lien.

[Wood et al. v. Holly Manufacturing Co.]

The other defenses set up for these parties as stated and argued by their counsel are, (1) that the lien of complainant is void as to each of them, because not recorded, (2) that Hooper & Co., as successors of Bullock, are *bona fide* purchasers without notice, (3) that Bullock & Co. were fully paid by the Water Company, (4) that complainant did not retain possession of the pumps and the bond holders had no notice of complainant's lien, and (5) that the second pump was erected after Bullock & Co. had conveyed to the Water Company the land to which it was attached.

The real defense, which if good, complainant must fail in the litigation, and if not, these defendants must fail is that they are *bona fide* purchasers without notice.

8. So far as the Water Company may be protected by such a plea, it is scarcely worth the while to discuss. It does not deny complainant's lien, and its notice of it. It simply does not admit the lien and notice; but, its attitude is that of a defendant in the interest of Hooper & Co. and Wood & Co. For them, it denied the said lien and notice of it, and claims in argument, that they are *bona fide* purchasers without notice. The Water Company was driven by force of the facts to, and very honestly assumed, this attitude in the litigation.

9. With respect to this transaction, the distinction between Bullock & Co., and the water company, is purely formal and fictitious. Bullock & Co. were the water company in every thing but name. They held the entire capital stock. The entire issue of bonds under the general mortgage was placed at their disposal. Without neglect of duty, the company must be presumed to have known what Bullock & Co. were doing towards the fulfillment of their contract. The proofs tend strongly to show, that the president, Dr. Ketchum, who resided then and afterwards in Mobile, had knowledge of complainant's lien and of its retention of the possession of the property, before Bullock & Co. conveyed to the company the land on which the engines are located, and his deposition was not taken to rebut proof of notice, for the reason, we may presume, he could not rebut it. A fact important to be proved for the defense, capable of proof, and not proved, will be presumed not to exist.—*Roney v. Moss*, 74 Ala. 390; *Carter v. Chambless*, 79 Ala. 231.

10. As to the other defendants, for whom the plea is set up, two essentials are necessary to be borne in mind for the establishment of their claim, (1) that the pumping engines had become fixtures of the real estate covered by the mortgage of the water company, and (2) that these defendants

are *bona fide* purchasers of said real estate, for value, without notice.

The complainant sets up no equity against all, but against a part only, of the property claimed to be covered by the mortgage, made to secure the bonds. This litigation does not raise the question of protection of the bonds. These might well be entitled to protection against secret trusts if any were sought to be fastened on them, but not to equities attached to the land, conveyed to secure them. If defendants claim the land as subject to their mortgage, by virtue of their being *bona fide* purchasers of it, for value, without notice of complainant's lien on it, which was prior to theirs, then, by their plea or answer, it was incumbent on them to make such claim as to the land itself, in the manner required by law. The defendants did make known their claim to the bonds, and how they acquired them, but whether in a manner as full as it is required by law, (*Thames v. Rembert*, 63 Ala. 561, 572), we do not find it necessary to decide; still, if sufficient as to the bonds, the answers are silent as to the material facts necessary to uphold the claim of *bona fide* purchasers of the land, on which it is claimed the engines were attached, in a manner to make them immovable fixtures. "The rule is settled in this State, that in such cases (defense of *bona fide* purchase) it is required of a defendant, who is a sub-purchaser, to aver in his plea or answer, clearly, distinctly and without equivocation, and with proper circumstantiality of detail, the following facts, (1st), that he is a purchaser from one in actual or constructive possession, who was seized or claimed to be seized of the legal title, at the same time briefly setting out substantially the contents of the deed of purchase, with date, consideration and parties; (2), that he purchased in good faith; (3rd), that he parted with value paying money or other valuable thing, assuming a liability, or incurring an injury, stating the nature of the consideration fully, (4th), that he had no notice of complainant's equity, and knew of no fact calculated to put him on enquiry, either at the time of the purchase, or at or before the time he parted with the consideration."—*Hooper v. Stahan*, 71 Ala. 75, 79; *May v. Wilkerson*, 76 Ala. 543, 545; *Gresham v. Ware*, 79 Ala. 192; *Boon v. Childs*, 10 Peters, 211. In the last case cited, the Supreme Court of the United States in announcing a similar doctrine say, that the conveyance must be a regular one; "for, the purchaser of an equitable title holds it subject to the equities, upon it, in the hands of the vendor." And our court, in *Gresham v. Ware, supra*, 148, speaking of the same de-

fense, and announcing the same doctrine as that stated above from *Hooper v. Strahan*, say of the party setting it up, "In no appropriate manner does he bring before the court the claim of a *bona fide* purchaser without notice, and his rights as such must be considered as elimated from the case."

11. When the general mortgage was made, the water company had not acquired and did not own the legal title to the land to which the engines are attached. The claim of defendants rests on the extension of the mortgage, to "after acquired property." Such a mortgage does not pass the legal title to after acquired property; it is only an equitable mortgage, operative on such property as soon as it is acquired. "In other words it seizes the property or operates on it by way of estoppel, as soon as it comes into existence and is in the possession of the mortgagor."—1 Jones on Mortgages, § 152.

12. To the proposition that a prior general mortgage, which in terms covered after acquired property, attached to rolling stock as soon as acquired, to the displacement of a contractual lien on it, the Supreme Court of the United States, by Justice Bradley, said, "The doctrine is intended to subserve the purposes of justice and not injustice. A mortgage intended to cover after acquired property can only attach itself to such property, in the condition in which it comes to the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time."—*United States v. New Orleans Railroad Co.*, 12 Wall. 362. And it was added, that such a prior lien or equity does not come within the reason of the registry laws, which are intended for the protection of subsequent, not prior purchasers and creditors. This court, touching the same matter, in *Shorter v. Frazer*, 64 Ala. 81, quotes approvingly, the language of C. J. MARSHALL in *Hinds v. Vallier*, 7 Pet. 271 that, "The rules respecting a purchaser without notice, are framed for the protection of him who purchases a legal estate, and pays the purchase money without knowledge of an outstanding equity. They do not protect a person who acquires no semblence of title. Even the purchaser of an equity is bound to take notice of any prior equity." And in the same case, the court hold, that if the purchase is of a mere equity, which can be enforced only through the instrumentality of a court of equity, there is no reason for a departure from the general principle, that priority in point of time, creates priority in point of right, and that the

[Wood et al. v. Holly Manufacturing Co.]

transfer or conveyance must be limited to the interest of the grantor.—2 Story Eq. § 1228 ; 1 Jones on Mortgages, § 158 ; *Fosdick v. Schall*, 99 U. S. 235 ; *Meyer v. Car. Co.*, 102 U. S. 1 ; *Central T. C v. Kneeland*, 138 U. S. 414, 423.

The chancellor in his opinion in this case, used language so apt in this connection, we quote it here : "If the principle contended for by respondents be law, it is unsafe to contract with any body for improvements, and rely upon the improvements for a contract lien as security. The land owner, whose property is being improved, has only to wait until the improvements are nearly completed, and sell out to some one who has given a "walking mortgage," and the unsuspecting party will find himself stript of his property and security."

These defendants when they acquired the bonds, parted with the valuable consideration which they here set up as a defense. If at that time, their vendor, the water company, had no legal title, they acquired nothing more than the title their vendor afterwards acquired, subject to existing equities.

13. The deed from Bullock & Co. to the water company was a quit-claim deed. It passed only such interest as Bullock & Co. had, subject to all liens and incumbrances. As has been repeatedly held, one who holds under a quit-claim deed only, can not claim protection as a *bona fide* purchaser without notice.—*Derrick v. Brown*, 66 Ala. 162 ; *Smith v. Perry*, 56 Ala. 266-269 ; *McMillan v. Rushing*, 80 Ala. 402, 407.

14. As to whether or not defendants, Hooper & Co. and Wood & Co. had notice of complainants' lien, as a matter of fact, is scarcely open to discussion. As to when they acquired notice is the subject of dispute and the evidence is somewhat conflicting. Those firms, however, from the very beginning, stood in close and very important business relations to Bullock & Co., as respects the building of the water company's works, and it was the natural and business like thing to do, for them to have become fully informed in regard to all of Bullock & Co.'s arrangements, for carrying out their contract with the water company.

In June, 1887, an agreement was entered into between Hooper & Co. and Bullock & Co., in reference to the furnishing of moneys for the completion of the water works at Mobile, in specifying, among other things, that said Hooper & Co., having already procured advances to Bullock & Co. of 50 per cent. of the $750,000 agreed to make other advances to them on the completion of said works and their acceptance by the city, "*clear of all liens or encumbrances other* than the

first mortgage under which the bonds on which these advances are made and to be made."

On the 2nd of October, 1887, for considerations therein expressed, Bullock & Co. agreed to give to Walter Wood of the firm of Wood & Co., a controlling interest in the construction of the water works company, after the moneys for which the bonds specifically placed with Hooper & Co. and Wood & Co., together with such expenditures as were necessary to pay for the labor required and to furnish the supplies, *materials and machinery* for the completion of the works, should be paid.

Said Walter Wood testified that the firm of Wood & Co. were informed in August, 1887, that complainant was to furnish the engines and pumps to Bullock & Co., and Harry S. Hooper, testified, that Hooper & Co. were so informed in September, 1887, and in that month, they show, that Bullock & Co. furnished them, each, with a detailed statement of the estimated cost of the works, in which was included an item of $50,000 for *"pumping engines to the Holly Manufacturing Co."*

By the third item of the "tripartite agreement," (between Hooper & Co., Wood & Co. and Bullock & Co.) dated 26th of October, 1887, Wood & Co. agreed to complete the works therein mentioned, "according to specifications *clear of all liens ahead* of the securities held by Hooper & Co., with the utmost diligence and without delay."

Bullock testified, that advances were made to his firm, after that agreement was entered into, by Hooper & Co., to the extent of $200,000 and by Wood & Co. for at least $100,-000. He also testified, that he furnished to Hooper & Co., between August and October, 1887, all the papers relating to the various plants in which his firm was concerned, including that at Mobile, and turned them over to them; and prior to October 26, 1887, the date of the tripartite agreement, he called Walter Woods' attention to his contract with complainant, and gave him a copy of it.

After all this, what doubt can remain, that these defendants were fully informed and had notice of complainants' lien on the engines and pumps long before the land on which they were erected was conveyed to Bullock & Co. by quitclaim, to the water company?

15. There is much evidence, also, tending strongly to show, that complainant, by its agents, was in the open and notorious possession of the property, from the beginning up to the time of the filing of the bill. This evidence, however, was in conflict with much introduced by the defendants,

tending to show to the contrary. We will not review it, since it is unnecessary.

16. As to the defense set up, that the second pump was erected after the conveyance by Bullock & Co. to the water company, it is sufficient to say, that the first engine and its connections had been placed on the land, before the conveyance, and the placing of the second had been commenced, was then going on, and was soon thereafter completed, and that the fact that some of the parts of the second engine were attached after the conveyance, can not affect the question of complainants' security, which was reserved upon the whole and not upon a part of the property. The complainant had, as against Bullock & Co., under their contract with them, an equity to proceed with the completion of their contract, which was to put both engines on the ground ready for use, and this equity a court of chancery recognizes. The water company and its mortgages as we have shown, acquired only such rights in the land as Bullock & Co. had, subject to all equities, with which it was burdened, including this one of the complainants, to complete its contract. In contemplation of law, the complainants's rights and equities, as to both engines and their connections are the same, as if both had been put in place, before the date of said conveyance.

17. Still anther defense is interposed, that Bullock & Co. had been fully paid by the water company all that it contracted to pay them, and if they did not pay complainant, the bond holders ought not to be held to lose a part of their property covered by their mortgages, concerning which, it need only be said, that they had no mortgage which was prior to complainants' lien, and if by their carelessness they failed to see that this lien, of which there is every reason to believe they were informed, was not paid off, so as to allow their mortgage to become operative on the machinery in question, it would be inequitable and against all good conscience, to require complainant to surrender their prior lien on it, for the benefit of defendants.

18. We deem it unnecessary to notice any other questions raised or the objections to evidence with which the case is burdened, because on the legal evidence in the cause, the complainant is entitled to recover.

The demurrer to the bill was properly overruled, and it is our judgment, that the decree of the Chancery Court be
Affirmed.