THE PEOPLE OF THE STATE OF UTAH ex rel. W. P. O'MEARA, Plaintiff, v. THE CITY COUNCIL OF SALT LAKE CITY, Defendant.

STATUTORY CONSTRUCTION — INHERENT POWER OF LEGISLATURE — PRESUMPTION OF LAW—KNOWLEDGE OF CURRENT HISTORY—BY CONSTITUTION MAKERS—CONSTITUTION—INTERPRETATION—ART. 14, SEC. 4, CONST.—DEBT CREATING POWERS—LIMITATION OF MUNICIPAL INDEBTEDNESS—SEC. 308, R. S. 1898.

1. STATUTORY CONSTRUCTION. In construing a legislative enactment, under the familiar principle of statutory construction, every doubt as

State ex rel. v. City Council.

to the validity of the enactment must be resolved in favor of the statute.

2. INHERENT POWER OF LEGISLATURE. The Legislature has the inherent power to authorize a municipality to issue bonds for its indebtedness; the Constitution, article 14, section 4, limits but does not confer such power.

3. PRESUMPTION OF LAW: KNOWLEDGE OF CURRENT HISTORY: BY CONSTITUTION MAKERS. The framers of the fundamental law of this State, must be presumed to have had knowledge of the fact, because a matter of current history, that many municipalities of the proposed State were already indebted, in excess of the four per cent limit, mentioned in article 14, section 4, Constitution, and yet had an entirely inadequate supply of water, light and sewer facilities.

4. CONSTITUTION: INTERPRETATION. Constitutions are not to be interpreted alone by their words, abstractly considered, but by their words read in the light of the conditions and necessities in which the provisions originated, and in view of the purposes sought to be attained and secured.

5. ARTICLE 14, SECTION 4, CONSTITUTION: DEBT-CREATING POWERS: LIMITATION OF MUNICIPAL INDEBTEDNESS: SECTION 308, REVISED STATUTES 1898. Under the provisions of section 4, article 14, of the Constitution, the two limited debt-creating powers of municipalities therein mentioned are separate and independent; the special limited power to incur an indebtedness for water, light and sewer purposes, is absolute within its own limits, and a debt created by virtue thereof is additional to that restricted and limited for general purposes, and fully authorized thereby and by section 308, Revised Statutes 1898.

Decided December 11, 1900.

Original application for a writ of mandate to prevent the city council of Salt Lake City from issuing bonds creating an indebtedness for the purpose of supplying the city with water, claiming that under section 4, article 14 of the Constitution the debt limit of the city is eight per cent of the value of the taxable property therein. Writ denied.

*A. L. Hoppaugh, Esq.,* for petitioner.

*F. B. Stephens, Esq.,* and *C. B. Stewart, Esq.,* for defendant.

BARTCH, C. J.—This is an original proceeding in this court, to obtain a writ of prohibition to prevent the city council of Salt Lake City from issuing certain city bonds and creating an indebtedness for the purpose of supplying the city with water. The petitioner in his affidavit, represents that the council is about to issue a series of 250 bonds of the aggregate sum of $250,000, for the purpose of increasing the water supply and improving the waterworks of the city, pursuant to secs. 308, 309 and 310, R. S. 1898, which provides for the submission of the incurring of a bonded indebtedness to such qualified electors as have paid a property tax in the preceding year; that on July 16, 1900, an election was held pursuant to statute and the question of incurring the indebtedness submitted to such electors; that a majority of the electors voted in favor of issuing the bonds; that thereafter the city council, by ordinance of September 24, 1900, provided for the issuing of the bonds, and threatens and intends to issue the same and incur the indebtedness, unless restrained and prohibited from so doing by this court; that such threatened action of the council is in violation of section 4, article 14, Constitution of this State, which the petitioner claims limits the total indebtedness of the city to four per cent of the assessed valuation of taxable property within its limits, for general purposes, and provides for four per cent additional for supplying the city with water, etc.; that the value of the taxable property in the city is $31,950,210; that the present total indebtedness, added to that threatened and intended to be created by the issuing of said bonds will exceed eight per cent of the value of the taxable property; and that, because of such excess, the issuing of the bonds would be in violation of the above mentioned provisions of the Constitution. The pe-

titioner further represents that the said election, upon which the validity of the proceedings of the city council depends, is wholly void because no legal polling places were established, nor any canvass of the result of the election lawfully made.

Upon filing this affidavit, an alternative writ of prohibition was issued. At the hearing, the defendant filed a demurrer to the petition, on the ground that it failed to state a cause of action, and after argument the matter was submitted upon demurrer.

The action, it appears, was brought to test the validity of the bonds. Upon argument, counsel for the plaintiff admitted that the objection to the conduct of the election, relating to the establishment of polling places and the canvass of the result, was not well taken. Therefore the sole question to be determined is, whether under section 4, article 14, Constitution, the entire debt of the city, for all purposes, is limited to eight per cent of the value of the taxable property, or whether a separate power is granted to incur debts for water, light and sewer purposes, not exceeding four per cent of the assessed valuation, independent and regardless of the amount of the general indebtedness. That section so far as material here, reads: "No city, town, school district or other municipal corporation, shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein, the valuation to be ascertained by the last assessment for state and county purposes, previous to the incurring of such indebtedness; except that in incorporated cities the assessment shall be taken from the last assessment for city purposes: * * * Provided, further, That any city or town, when authorized as provided in section three of this article, may be allowed to incur a larger indebtedness, not exceeding four per centum additional, for supplying such city or town with water, artificial lights or sewers, when the works for

supplying such water, light and sewers, shall be owned and controlled by the municipality."

Counsel for the plaintiff insist that the framers of the Constitution intended, by this section, to prescribe a limitation beyond which no city could go, in its expenditures, for any purpose, and that when the several provisions thereof are construed together, it is manifest that the intention was to limit the entire indebtedness of a city to eight per cent of the value of the taxable property.

Just what the constitution-makers intended, or just what they meant by the language employed, is, probably, not altogether free from doubt.

The legislature, recently after the adoption of the constitution, directly contrary to the contention of the petitioner, interpreted section 4, as conferring power, through proper legislation, upon municipalities to incur debts for water, light and sewer purposes, in any sum not to exceed four per cent of the valuation of the taxable property, independently of the power to incur debts for other purposes. This is apparent from the several legislative enactments, dependent upon this section of the Constitution, among which is section 308, R. S. 1898, providing, as follows:

"Any city or town in this State is hereby authorized to incur an indebtedness not exceeding four per cent of the value of the taxable property therein, for the purpose of supplying such city or town with water, artificial light, or sewers, when the works for supplying such water, light and sewers shall be owned and controlled by the municipality, when the proposition to create such debt shall have been submitted to a vote of such qualified electors as shall have paid a property tax in the year preceding such election and a majority of those voting thereon shall have voted in favor of incurring such debt."

23  Utah—2

Was this affirmative interpretation of section 4, by the Legislature, correct? If not then its enactments, resulting therefrom, are void, and must be declared so. Before this can be done, however, under a familiar principle of construction, every doubt as to the validity of the enactment must be resolved in favor of the statute, and in considering the Constitution and statute, with reference to the subject before us, we must not be unmindful of the fact that the Legislature has the inherent power to authorize a municipality to issue bonds for its indebtedness. The Constitution limits but does not confer the power. The Legislature, therefore, having expressly authorized the municipality to incur an indebtedness, for water, light, and sewer purposes, to the extent of four per cent of the valuation of the taxable property, independent of debts for general purposes, that power exists in the municipality, unless there is an affirmative restriction, in the Constitution, upon the power of the Legislature to confer it. It is urged that such a restriction is contained in section 4, article 14 of that instrument, and that it is in its nature, a general restriction with a special extension of restricted power. The principal clause of the Constitutional provision, in question, constitutes a limitation or restriction upon the power of any municipality to "become indebted to an amount, including existing indebtedness, exceeding four per centum of the value of the taxable property therein." This is a general restriction upon the debt creating power, and deprives the Legislature of its inherent power to authorize the municipality to incur any indebtedness beyond the four per cent, and, if the framers of the Constitution had stopped there and made no further provisions upon this subject, then there would be no difficulty of construction, because it would be apparent that the four per cent limit would include all debts, those existing as well as those to be created. Those who framed the fundamental law, however, were confronted with

the conditions and necessities of growing cities, and must be presumed to have had knowledge of the fact, because a matter of current history, that some of them already had existing debts in amount largely in excess of the four per cent limit, and yet had an entirely inadequate supply of water, light and sewer facilities. Such was the case of the chief municipality of the proposed State, and it, under the general restriction, would have been wholly unable to provide for acquiring water, light and sewers adequate to its growing necessities. Doubtless, considering these conditions and facts, and possibly, influenced thereby in a considerable degree, they added the clause, in the shape of a proviso, that any city or town "may be allowed to incur a larger indebtedness, not exceeding four per centum additional, for supplying such city or town with water, artificial lights or sewers, when the works for supplying such water, light and sewers, shall be owned and controlled by the municipality." This, in effect, is the grant of a limited power, for these special purposes, which the general restriction had taken away, and were it not for the terms "larger" and "additional," it would be quite clear that an absolute power, within its own limits, and independent of the restriction, as to general debts, was intended. While these words, viewed abstractly, may render the real meaning of the clause somewhat obscure, still when considered with reference to the conditions prevailing when the instrument was drafted, the purpose of the proviso can hardly be mistaken. In interpreting these words and ascertaining their meaning as used, it becomes important to consider, in the light of the conditions and growing necessities of the municipalities, the scope and purpose of the entire provision. "Constitutions are not to be interpreted alone by their words abstractly considered, but by their words read in the light of the conditions and necessities in which the provisions originated, and in view of the purposes sought to be attained and secured." Dillon Mun. Corp., sec. 3a.

Section 4 was drafted both for present and future operation, primarily for future operation. This is true both as to the general indebtedness and the special. Viewed in the light of the conditions existing when the Constitution was framed, these words "larger" and "additional," form a clear expression of the natural operation of the section. As we have seen, the principal clause refers to the power to incur general indebtedness, and limits that power to four per cent of the valuation of the taxable property, including the existing indebtedness, and the words "larger" and "additional," simply mean that, in addition to, and irrespective of the general indebtedness, including that existing, to which the debt creating power is restricted by virtue of the principal clause, an indebtedness for the special purposes, enumerated in the proviso, may be incurred up to four per cent of the value of the taxable property in the municipality. Whatever may have been the motive for this grant of limited power for these special purposes, it seems clear that, in their choice of words to express it, the framers of the Constitution, confronted with the existing conditions of the municipalities, had in view the permanent and prospective operation of the section, and, doubtless, their chief purpose was to restrict the inherent power of the Legislature to authorize the incurring of debts in any amount, and to separate the general debt power from the special debt power. The meaning of the terms employed must be judged by the purpose for which they were used. The expression, "larger indebtedness not exceeding four per centum additional," was thus evidently intended to refer to the general indebtedness as such, and the effect of the language used in the whole section is to restrict and in some cases, by "including existing indebtedness," to temporarily suspend the general limited power, while it grants a special limited power for the special purposes mentioned, which is essential to the health, welfare and comfort of the people, and

is not limited by the phrase "including existing indebtedness." Keeping in mind the facts and conditions referred to, this would seem to be the natural construction of the section. The limited restriction and the restricted grant to create indebtedness are essentially independent and distinct, and the general and special debts which they authorize are separated by their purposes and the separate powers under which they must be incurred. This would clearly be the natural operation and effect of the two four per cent limits, in the absence of any contingency, such as a decrease in the valuation of the taxable property, which would cause the four per cent of the valuation, under the general power, to be less than the indebtedness. But the happening of such a contingency can not change the purpose and natural operation of the section; nor affect the special power under which the municipality, in this case seeks to act. The Constitution of the State of Washington has a section almost identical with the one here under consideration, and the Supreme Court of that State has construed similar limitations to be separate and distinct. Austin v. Seattle, 2 Wash. 667; Seymour v. Tacoma, 16 Id. 427; Petros v. Vancouver, 13 Id. 423; State v. Hopkins, 14 Id. 59; Graham v. Spokane, 19 Id. 447.

From these considerations we are of the opinion that, under the Constitution, the two limited powers are essentially separate and independent; that the special limited power, to incur an indebtedness for water, light and sewer purposes, is absolute within its own limits; that a debt incurred by virtue thereof is additional to that restricted and limited for general purposes; and that the municipality, in this instance, has both the constitutional and statutory power to issue the bonds referred to in the petition herein.

The writ of prohibition must therefore be denied. It is so ordered.

*Miner,* and *Baskin, JJ.,* concur.