(86 South. 8)

### TOWN OF CAMDEN v. FAIRBANKS, MORSE & CO.   (2 Div. 692.)

(Supreme Court of Alabama.  Jan. 22, 1920. Rehearing Denied Feb. 14, 1920.)

1. **Constitutional law** ⬅16—Rule as to interpretation of Constitutions stated.

Constitutions are interpreted by giving the words used their natural signification, in view of the order and grammatical arrangement, and in the light of the conditions and necessities in which the provisions originated, and the purposes sought to be attained and secured.  (Per Thomas, Somerville, and Gardner, JJ.)

2. **Municipal corporations** ⬅865(2)—Constitutional provision limiting indebtedness of city construed.

Under Const. 1901, § 225, limiting city's indebtedness to 5 per cent. of the assessed value of the property, except for specified purposes, "for which purposes an additional indebtedness not exceeding three per cent. may be created," an indebtedness for the special purposes enumerated may be incurred, not exceeding 3 per cent. of the assessed value of the property, though the whole indebtedness of the city for general purposes and for such special purposes may exceed 8 per cent. of the assessed value.  (Per Thomas, Somerville, and Gardner, JJ.)

3. **Municipal corporations** ⬅921(3)—Proceeds of sale of waterworks bonds not available for general debts.

Where city sold bonds for construction of waterworks system, the proceeds of the sale constituted a special fund, subject only to contracts and disbursements with reference to the construction of the waterworks system, and not subject to the payment of general debts.  (Per Thomas, Somerville, and Gardner, JJ.)

4. **Municipal corporations** ⬅865(1)—Cash to credit of special fund for municipal utility deducted in ascertaining indebtedness.

Cash in city treasury to credit of a special fund for a public utility provided by the Constitution must be deducted in ascertaining city's indebtedness under the limitation to contract debts in the purchase or construction of such special utility, under Const. 1901, § 225; it being presumed that the cash will be applied to such special purpose.

5. **Sales** ⬅479(1)—Seller may sue in equity in lieu of sale of machinery attached to freehold.

Though, under a conditional sale contract reserving title, machinery attached to a freehold may be removed on buyer's default, relief may be had in equity.

6. **Municipal corporations** ⬅254—Equity held to have jurisdiction in action against city by seller to city of waterworks pump.

Where conditional seller of pumping machinery to city, which is insolvent, failed to receive payment of balance of purchase price from dissipated special fund, but is secured by a lien on the machinery, equity will take jurisdiction in seller's suit for the sale or restoration of the machinery, and, if required, direct a sale of the machinery and permit to its removal, so as not to unnecessarily injure and interfere with the other part of the waterworks system to which it had become affixed, or unnecessarily interfere with the rights of the general public.

7. **Municipal corporations** ⬅254—Seller to city after failure to compel payment out of special fund could not recover judgment.

Where seller to city of waterworks pump failed, by appropriate and timely action to compel payment of purchase price out of special fund created by sale of waterworks bonds, the seller could not thereafter recover a general or money judgment against city on its failure

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to pay balance of purchase price. (Per Thomas, Somerville, and Gardner, JJ.)

**8. Pleading ⬥11—Exhibit in pleading of resolution authorizing execution of contract unnecessary.**

In action against city for nonpayment of goods purchased from plaintiff, it was unnecessary to exhibit in plaintiff's pleading the appropriate resolution authorizing, under Code 1907, § 1183, the execution of the contract with plaintiff; the adoption thereof being a matter to be shown in support of the averment that city officials had authority to make such contract. (Per Thomas, Somerville, and Gardner, JJ.)

Anderson, C. J., and McClellan and Brown, JJ., dissenting.

Appeal from Circuit Court, Wilcox County; B. M. Miller, Judge.

Bill by Fairbanks, Morse & Co. against the Town of Camden for the sale of certain property, or for its restoration, and for general relief. From the decree rendered, the respondent appeals. Affirmed.

Bonner & Miller and S. C. Godbold, all of Camden, for appellant.

The demurrers to the bill should have been sustained, because of an adequate remedy at law. 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132. The contract was not properly executed. Section 1183, Code 1907, as amended by Acts 1909, p. 205; 28 Cyc. 664, 686; 45 Ala. 237; 20 A. & E. Ency. of Law, 1157, 1163, 1165; 31 Ala. 76. The bill also involves, under its relief, if granted, an excess of debt or obligation. 2 Hill (N. Y.) 421; 160 Ala. 544, 49 South. 417, 37 L. R. A. (N. S.) 1027; 188 Ala. 423, 66 South. 161; 152 Ind. 232, 52 N. E. 987, 43 L. R. A. 820; 142 Mo. 101, 43 S. W. 625; 251 Pa. 28, 95 Atl. 938; 245 Pa. 287, 91 Atl. 622. See, also, 91 Ala. 522, 8 South. 706, 24 Am. St. Rep. 931; 51 Ala. 224; 38 Ala. 647; 132 Ala. 249, 31 South. 87, 90 Am. St. Rep. 904; 158 Ala. 117, 48 South. 345; 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20; 146 Ala. 559, 41 South. 862; 174 Ala. 179, 56 South. 802; 67 Ala. 95; 5 Ala. App. 387, 59 South. 315; 10 Ala. App. 475, 65 South. 440.

Pettus, Fuller & Lapsley, of Selma, for appellee.

The plaintiffs were entitled to restitution or compensation. 10 Wall. 678, 19 L. Ed. 1040, 102 U. S. 294, 26 L. Ed. 153; 114 Ala. 433, 21 South. 960; 174 Ala. 179, 56 South. 805; 113 S. W. 97; 23 Utah, 13, 64 Pac. 461; 99 Wis. 1, 74 N. W. 635, 77 N. W. 167; 19 Wash. 447, 53 Pac. 714; 207 Ill. 492, 69 N. E. 970; 19 R. C. L. 277; (D. C.) 251 Fed. 161. See, especially, 154 Ala. 511, 45 South. 663, 15 L. R. A. (N. S.) 711; 110 Ala. 232, 20 South. 89; 119 Ala. 97, 24 South. 857.

THOMAS, J. The complainant corporation filed its bill against the town of Camden to recover pumping machinery, which was purchased for that municipality and became a part of its waterworks. The machinery was sold to the municipality under a written contract of date February 10, 1916, for the purpose indicated—the vendor guaranteeing said machinery to be well made, of good material, and in a workmanlike manner; that, if any part should fail through defect in workmanship or material within a year from date of shipment, said company would replace the defective parts free of charge, etc. The terms of sale were as follows: $1,907.75, payable before the 10th of the month following delivery of the machinery at Camden; $200, payable before the 10th of the month following test; $1,000, payable 12 months after shipment—all deferred payments to be evidenced by negotiable notes, payable to the order of the company and bearing interest from date of shipment at the rate of 8 per cent. per annum, and payments represented by notes "to be secured by the machinery herein specified." The contract further stipulated that the proposal of purchase and sale by Fairbanks, Morse & Co. to "Town of Camden, Purchaser, Camden, Alabama," was made upon condition that the town make "the financial arrangements necessary to complete the waterworks system as contemplated," and upon the further fact "that the title and ownership of the property herein specified shall remain in this company until final payment thereof has been made in full," etc.; respondent to take all legal steps as might be required by the laws of the state of Alabama for preservation of complainant's title as provided in the contract, and in the event of default by respondent in making any of said payments when due, the full amount of the purchase price, at the election of the company, to become immediately due and payable. The contract concludes with this stipulation and superscription:

"It is expressly understood this proposal made in duplicate contains all agreements pertaining to property herein specified, there being no verbal understanding whatsoever, and when signed by purchaser and approved by an executive officer or local manager of Fairbanks, Morse & Co. becomes a contract binding parties hereto. * * * Respectfully submitted, Fairbanks, Morse & Co., by E. G. Bergh, Salesman.

"The above proposal is hereby accepted this 10th day of Feb., 1916.

"E W. Berry, Mayor.

"B. H. Matthews, Town Clerk,

"Camden, Alabama.

"Town seal lost at present. E. W. Berry, Mayor.

"Signed in presence of J. N. Stanford, Judge of Probate.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Approved at New Orleans, La. Fairbanks, Morse & Co., by Jno. Jones, Manager. OK J. OK WH."

The bill avers that on April 26, 1916, complainant accepted the contract as binding and shipped to respondent a part of said machinery, the balance being shipped May 18th thereafter, which shipments were received by respondents and thereafter used in the construction of its waterworks; that the contract was approved by complainant's executive officer (between February 10 and July 24, 1916), and was ratified and became binding on complainant on April 29, 1916, by its shipment of a part of said machinery to respondent and by its receipt and use by respondent for the contract purpose. It is further averred that before the date of the contract the town of Camden had issued bonds to the extent of 8 per cent. of the assessed value of the taxable property therein for the purpose of constructing or buying a waterworks system and for the improvement of its streets, that when said contract was entered into said bonds had not been sold and delivered, and that between the time the contract was signed and the time it became binding said bonds were sold and delivered and the proceeds therefrom were in the treasury of that town. It is averred that at this juncture the mayor of Camden notified Fairbanks, Morse & Co. (complainant) that "financial arrangements" had been perfected to build and complete the waterworks system, and that the municipality was ready to proceed with the purchase of said machinery to be used as a part of said system. Under said written instrument complainant delivered and installed said machinery as an integral part of the waterworks at a cost of $3,107.75, and it is averred, as agreed therein, there was paid $1,500 of the purchase price on November 27, 1916, $194.20 credited to respondent on December 20, 1916, and that the balance due and unpaid was $1,413.55, and that since the installation of said machinery respondent has been in possession thereof, and has used it as a part of its waterworks system, and has made no claim of any defect therein, or of a breach of any of the contract provisions.

The prayer of the bill is for a sale of the machinery to pay the amounts due on the contract, or that the property be restored to complainant after ascertainment of the amounts due by the parties and payment of such just and legal demands so ascertained to be due by the respective parties, and concludes with the prayer for general relief.

The ground on which the town of Camden bases its right to withhold payment is that the issuance and sale of the bonds to the extent of 8 per cent. of the assessed value of the property therein was the full sum in which such municipality was permitted to become indebted under the Constitution (section 225), and for that reason its alleged contract of purchase of said machinery, after its bonds were issued and sold, was unauthorized by law; that no recovery may be had for any balance due for said machinery from the proceeds of the bond sale or otherwise of the municipality; and that any attempted reservation of title thereto was not enforceable.

The pertinent provision of the Constitution relating to the indebtedness of a municipality, of the class of Camden, is that—

"No city, town, or other municipal corporation having a population of less than six thousand, except as hereafter provided, shall become indebted in an amount including present indebtedness, exceeding five per centum of the assessed value of the property therein, except for the construction of or purchase of waterworks, gas, or electric lighting plants, or sewerage, or for the improvement of streets, for which purposes an additional indebtedness not exceeding three per centum may be created: Provided, this limitation shall not affect any debt now authorized by law to be created, nor any temporary loans to be paid within one year, made in anticipation of the collection of taxes, not exceeding one-fourth of the annual revenues of such city or town." Const. § 225; Stokes v. City of Montgomery, 203 Ala. 307, 82 South. 663.

The construction by our court of the several provisions of section 225 is not decisive of the question before us. Of these decisions it may be noted that the two classes of municipal corporations are dealt with and are created by having a population of more or less than 6,000, and that the expression "having a population" means the population at the time of the creation of the indebtedness, and not that shown by the preceding federal census (Ryan v. Mayor of Tuscaloosa, 155 Ala. 479, 488, 46 South. 638); that such municipal corporations are not affected by the limitations contained in their original charter, but by the Constitution fixing the limitation on said power (Howard v. Town of East Lake, 155 Ala. 525, 527, 46 South. 754); that a municipal corporation exceeding its debt limit was not liable in an action for damages for personal injury received in the operation of an electric lighting plant owned and operated by the municipality, and not having so exceeded its debt limit such municipality, while engaged in the business of furnishing lights to the public, is, quoad hoc, exercising proprietary or business powers, and is governed by the rules of law applicable to ordinary business corporations engaged in like businesses (Town of Athens v. Miller, 190 Ala. 82, 91, 66 South. 702; Darby v. City of Union Springs, 173 Ala. 709, 55 South. 889). The insufficiency of pleading to show that the obligation sued on was not executed to secure a temporary loan to be paid within a year, and made in

anticipation of the collection of taxes, was discussed in McCrary Co. v. Town of Brantley. 202 Ala. 136, 79 South. 602. The foregoing are illustrative of the constructions given to several of the provisions of section 225 of the Constitution.

[1] A reference to the debates of the constitutional convention will illustrate the extreme views given expression of freedom and of limitation of cities to contract debts for general and for specifically designated purposes, and that took shape in the constructive conservatism of section 225 of the Constitution. We may remark that Constitutions are interpreted by giving the words used their natural signification, and by regarding the order and grammatical arrangement in which they are placed; yet the interpretation is not alone abstractly considered by their words, "but by their words read in the light of the conditions and necessities in, which the provisions originated, and in view of the purposes sought to be attained and secured." Dillon, Mun. Corp. vol. 1, § 4 (3a); Moody, Judge, et al. v. Gunter et al., 84 South. 831:[1] State ex rel. Winter v. Sayre, 118 Ala. 1, 28, 24 South. 89; People ex rel. O'Meara v. City Council of Salt Lake City, 23 Utah, 13, 64 Pac. 460, 462; Hagan, v. Com'rs, 160 Ala. 544, 551, 49 South. 417, 37 L. R. A. (N. S.) 1027.

[2] When considered in the light of the conditions existing when the Constitution was framed, the words "for which purposes an additional indebtedness not exceeding," etc., form a clear expression of the natural operation of the proviso in section 225 of the Constitution—that in addition to and irrespective of the amount of the city's general indebtedness an indebtedness for the special purposes enumerated ("construction of or purchase of waterworks, gas or electric lighting plants, or sewerage, or for the improvement of streets") may be incurred, not exceeding 3 per cent. of the assessed value of the property in said municipality, though the whole indebtedness of such municipality for general purposes and for said special purposes may exceed 8 per cent. of assessed values. Austin v. City of Seattle, 2 Wash. 667, 27 Pac. 557; Graham v. City of Spokane, 19 Wash. 447, 53 Pac. 714; Seymour v. City of Tacoma, 6 Wash. 427, 33 Pac. 1059; Petros v. City of Vancouver, 13 Wash. 423, 43 Pac. 361.

The municipality's bonds, aggregating 3 per cent. of its correct tax values, were issued for the purpose of constructing or purchasing a waterworks system, and sold in advance of the letting of contracts to materialmen, and with engineers, mechanics, and laborers, in order to construct the waterworks system. The proceeds of the sale of said bonds, it is averred, were in the town's treasury when the contract with complainant was entered into for said machinery, when part payment therefor was made, and when it was installed as an integral part of that waterworks system.

Should the amount of moneys to the credit of the special fund in the treasury—the proceeds of the sale of the bonds—be deducted from the said special indebtedness of the town of Camden to ascertain whether that indebtedness exceeded the limit of 3 per centum of the assessed values of the property therein allowed by the Constitution for the purpose of constructing the waterworks system, as affecting the right of that municipality to contract with reference to constructing a waterworks system and payment to be made out of the special fund obtained by a sale of said bonds? From a practical viewpoint it was impossible to convert the bonds of the town into cash and eo instante construct its waterworks system. This may be possible when such system is purchased by a municipality, by making payment therefor in its bonds issued for such purpose. There can be no question that, under section 225 of the Constitution, such public municipal utility may be obtained by construction as well as by purchase. The latter is not always possible. In the instant case complainant was contracted with to furnish certain of the machinery to be installed and to make good its guaranty with reference thereto for the period stated in the contract. Pursuing a safe policy, the town paid in cash about half of the purchase price, and retained the balance at interest for the period of the contract guaranty.

[3] It was necessary and required that the proceeds of the sale of the bonds be actually covered into the town's treasury for the special purpose of guaranteeing to vendors the town's ability to effectuate the purpose for which the bonds were issued. When the bonds were converted by sale into moneys, the same became and were a special fund in the treasury, subject only to contracts and disbursements with reference to the specific object or purpose for which the bond issue was authorized by and under the Constitution. As such special fund it represented the authorized bond issue, was not subject to payment of the general debts of the town, and could be lawfully applied only to the purpose of its issue. Its immediate application to the balance due complainants, and evidenced by the one-year notes, would have accomplished nothing further than the law had already accomplished, in so far as affecting the right of contract under the Constitution as to the objects or purposes of the bond issue, and for the disbursement of the special fund obtained from the sale of the bonds.

The Wisconsin court in Crogster v. Bayfield County, 99 Wis. 1, 74 N. W. 635, 638, 77 N. W. 167, held that, in determining the

existing indebtedness of a municipality within the constitutional limitation, a municipality may not incur an indebtedness exceeding a certain per centum of taxable property, including existing indebtedness; the amount of cash on hand and available assets and resources readily convertible into cash should be subtracted from such outstanding indebtedness. See, also, Graham v. City of Spokane, 19 Wash. 447, 53 Pac. 714.

In Webb City & Carterville Waterworks Co. v. City of Carterville, 142 Mo. 101, 117, 43 S. W. 625, 629, the Missouri court held that the words "income and revenue provided each year" do not include money arising from the sale of the city's bonds, which were sold for the purpose of raising money to pay other bonds then outstanding, and the fact that a part of the money so derived has been placed by the city in its general expense fund did not alter the case.

Bonds issued under the Constitution, permitting the city to issue them, "notwithstanding it had exceeded its limit of constitutional indebtedness, money held by the city treasurer to pay special assessment warrants when presented, unpaid amounts which the city has been assessed for public benefits in special assessment cases, amount of tax anticipation warrants, and floating indebtedness, the money to pay which is in the city treasury, are not part of the indebtedness of the city, in a constitutional sense," is the holding of the Illinois court. Stone v. City of Chicago, 207 Ill. 492, 69 N. E. 970.

The Pennsylvania court said the constitutional restrictions were not intended to make municipalities dishonest, or to prevent those who contract with them from collecting their just claims, but to check rash expenditures on credit and prevent loading the future with inconsiderate extravagance. The justice said:

"It is not, however, always possible to adapt present action to future results with absolute precision, and if means are adopted which in good faith, according to reasonable expectation, will produce a sufficient fund, the contract entered into on the faith of them should not be held unlawful on account of an unintentional miscalculation, or an accidental and unexpected failure to produce the full result. Thus if a city at the time of making a contract levies a special tax, in good faith supposed to be adequate to meet it, but in consequence of fire or flood, or decline in values, the result is an insufficient fund, it cannot be held that the contract, good at its inception, would thereby be made bad." Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, 49, 46 Atl. 1035, 1036 (80 Am. St. Rep. 812).

So in Schuldice v. City of Pittsburgh, 251 Pa. 28, 38, 95 Atl. 938, 942, that court held that a city's borrowing capacity—

"without a vote of the people, under the 2 per cent. limit, is to take the gross councilmanic debt, and from it deduct the amount of all councilmanic bonds held in all sinking funds of the city. Deduct also the cash on hand which has been paid into the sinking fund for the specific purpose of retiring the particular issue in question, and which cannot lawfully be diverted to any other purpose."

The rule is thus stated by Mr. Dillon in his work on Municipal Corporations (5th Ed.) vol. 1, § 197, p. 366:

"The cash in the city treasury affects the power to incur debt; as an immediate means of paying and discharging a liability presently incurred; it may fairly be claimed that, notwithstanding the obligation of the contract out of which the liability grows, the city is to the extent of such cash operating on a cash basis without incurring a debt within the meaning of the Constitution. * * *"

Note: "As the sting of municipal debt is taxation, which is often the only and always the main resource or means of payment, a leading object of the constitutional debt limitation is to save the taxpayers from the burden of undue or heavy taxation. As cash on hand actually to discharge a liability incurred relieves or exonerates to that extent the municipality from the necessity of levying taxes to pay such liability, the doctrine of the courts stated in the text seems to the author to be a reasonable and sound exposition of the Constitution."

He supports this text by many authorities. See, also, Dively v. Cedar Falls, 27 Iowa, 227; German Ins. Co. v. Manning (C. C.) 95 Fed. 597; Field v. Stroube, 103 Ky. 114, 44 S. W. 363; 19 R. C. L. p. 980, § 277.

Mr. Gray, in his Limitations of Taxing Power, says that in several states a city's bonds held in its own sinking fund are not to be considered as a part of its debt in calculating the amount of such debt under the constitutional limit, and that there is no reason why the same doctrine should not be applied in the case of other property held in a sinking fund, "devoted by law to the payment of the debt." Section 2099. On like principle, he thinks:

"The cash which a city or other governmental division actually has on hand, and the uncollected taxes of the current year are to be deducted from the total amount of its outstanding debts, in computing the amount of its total indebtedness in order to ascertain whether the constitutional debt limit has been reached." Section 2100.

He supports this text by Graham v. Spokane, supra; Crogster v. Bayfield County, supra; French v. City of Burlington, 42 Iowa, 614.

[4] If assets of a city in bonds and money in a sinking fund devoted by law to the payment of specific debts (Kelly v. City of Minneapolis, 63 Minn. 125, 65 N. W. 115, 30 L. R. A. 281; Brooke v. City of Philadelphia, 162 Pa. 123, 29 Atl. 387, 24 L. R. A. 781) are to be deducted from the total amount of outstanding bonds of that city for the purpose of determining its actual

indebtedness under constitutional provisions and limitations, for like reasons cash on hand to the credit of a special fund for a public municipal utility provided by the Constitution must likewise be deducted, in ascertaining a city's indebtedness under constitutional limitation to contract debts in the purchase or construction of such special utility, represented by said special fund in the treasury. In each case it will be presumed that the bonds or cash will be applied to the purpose for which by law it must be devoted.

Such may not be the presumption as to cash in the general treasury of the city subject to appropriation, at the discretion of the municipal authorities, to the payment of current expenses or to any other municipal purpose. As to such moneys there is no sufficient guaranty that they will be applied to the payment of the then existing debts without the incurring of other debts of a like or larger amount. .Otherwise stated, a city indebted to the constitutional limit may have a large sum in its general treasury when the taxes for the current year are paid, which is subject to disbursement for general municipal purposes. If such amount in the general treasury may be deducted from the total amount of outstanding indebtedness for special improvements under the Constitution, to ascertain the actual debts under said constitutional limit for such special purpose or utility, a larger debt might be incurred for such special purpose or utility, and the municipality may then proceed otherwise to expend the money in the general fund, leaving such special indebtedness in excess of the amount allowed by the Constitution for such purpose. Dealing with this phase of the question, the Supreme Court of Illinois has pointed out the fallacy of the insistence that cash in the general treasury should be deducted from total indebtedness, by saying:

"The question is not one of insolvency, but solely one of indebtedness." City of Chicago v. McDonald, 176 Ill. 404, 418, 52 N. E. 982; Fuller v. City of Chicago, 89 Ill. 282; City of Springfield v. Edwards, 84 Ill. 626.

The constitutional inhibition construed by the Illinois court was that no city shall be allowed to become indebted "in any manner or for any purpose, beyond the prescribed limit." Section 12, art. 9, Const. Ill. 1870. Such is not the power or limitation contained in section 225 of our Constitution. Where the property or money is a sinking fund or to the credit of a special fund devoted by law to the payment of a debt incurred for a special purpose, or where the proceeds of the sale of the bonds in a city treasury are to the credit of the special fund set apart and provided by the Constitution for the purchase or construction of a municipal waterworks system, to be expended in the purchase of necessary machinery, materials, etc., in the construction of the water-

works system, it must be presumed that such property or money so devoted by law to such special purpose will be used in the payment of such special or specific debts so provided and incurred. An appropriate process, will compel a lawful application of such funds to the class of indebtedness for which it was authorized and provided. We have found no direct authority by this court to the foregoing effect; however, the decision in Board of Revenue of Shelby Co. v. Farson, 197 Ala. 375, 72 South. 613, L. R. A. 1918B, 881, bears strong analogy to the question now decided. This view is given expression by Mr. Chief Justice White in Farson, Son & Co. v. Bird, Co. Treas. Shelby Co., Ala., 248 U. S. 268, 271, 39 Sup. Ct. 111, 112 (63 L. Ed. 233). He said:

"In that case, which was an action against the board of revenue of Shelby county to compel the levy of the one-fourth of 1 per cent. tax, as provided in the courthouse contract, for the purpose of paying, not only certain warrants which were past due in 1916, but to provide for the warrants falling due in 1917, the court awarded the mandamus sought. In doing so, it not only held that the courthouse contract was valid, and that the agreement to levy the tax as therein stipulated was lawful, but, moreover, that the subsequent action of the board of revenue in diverting the fund to the detriment of the courthouse warrant holders was an impairment of the obligations of the contract, and was void because of repugnancy to the Constitution of the state and to the contract clause of the Constitution of the United States."

Appellant further insists that, if the contract of conditional sale be held valid, the recovery of the property the subject thereof would be denied, because of its public use in supplying the citizens of Camden with water, and relies on Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132. That case is distinguishable from the one at bar. In Litchfield's Case the plaintiff had loaned money to the town, which money was used in constructing the city's waterworks, and no part of the money so loaned was used for any particular part or specific unit of the system, nor did any particular part of the system represent the specific funds borrowed by the municipality. For this reason the lender was denied the specific relief prayed. In the instant case, Fairbanks, Morse & Co. did not furnish money to be expended in the construction of the waterworks system for the town of Camden, but furnished and installed the specific machinery (a separate unit of that municipality's utility) which was of easy identification, and enforcement of the vendor's lien retained thereto was without consequent irreparable public inconvenience. Such was not a fact in Litchfield's Case. Should this court enforce payment out of the specific machinery purchased of Fairbanks, Morse & Co. and installed as a part of said waterworks sys-

tem, on its removal, pursuant to a proper decree in equity, that town would be enabled to purchase in the open market like necessary machinery, and the damage to the municipal waterworks system could be easily remedied by such purchase and installation of the new machinery by the town. See analogous ruling in Wood v. Holly Mfg. Co., 100 Ala. 326, 348, 13 South. 948, 46 Am. St. Rep. 56; Ocmulgee River Lbr. Co. v. Ocmulgee Valley Ry. Co. (D. C.) 251 Fed. 161: Hunt v. Bay State Iron Co., 97 Mass. 279.

[5] Though the contract expressly provides that the machinery furnished and installed should not become attached to the freehold in such wise as to deprive the owner of the title to his property, and though the court has held that, notwithstanding the machinery is attached to the freehold, under a proper contract reserving title to the owner, the same may be removed in the event of default in payment of stipulated sums. (Warren v. Liddell, 110 Ala. 232, 246, 247, 20 South. 89; Adams Mach. Co. v. Interstate Bldg. & Loan Asso., 119 Ala. 97, 24 South. 857; Gen. Elec. Co. v. Town of Ft. Deposit, 174 Ala. 179, 189, 56 South. 802), yet we believe relief may be had in equity.

[6-8] The property of private corporations is generally held subject to legal process for satisfaction of debt. On considerations of public policy such property has been excepted from such seizure and sale "when the corporation is created to serve public purposes charged with public duties, and is in the exercise of its franchise and in the performance of its duties." The remedy of a judgment creditor in such cases, said Mr. Chief Justice Stone, is—

"to obtain the appointment of a receiver, and the sequestration of its income or earnings. * * * The exemption from levy is maintainable, however, only upon the theory that the corporation is created for the furtherance of public purposes, of such importance to the public that there must not be private interference with such of the corporate property as is essential to effectuate these purposes, and presupposes that to these purposes, the property is being applied. Property not necessary to effectuate these purposes, if acquired by gift or purchase, may be taken by legal process for the satisfaction of debts. 2 Morawetz, Corp. § 1125. And so may personal property employed, and necessarily employed, in the exercise of corporate franchises. 1 Freeman on Executions. § 179." Gardner et al. v. Mobile & N. W. Rd. Co., 102 Ala. 635, 645, 646, 15 South. 271, 274 (48 Am. St. Rep. 84).

Analogous decisions are City of Decatur v. Southern Ry. Co., 183 Ala. 531, 62 South. 855, 48. L. R. A. (N. S.) 231; City of Decatur v. Southern Ry. Co., 187 Ala. 364, 65 South. 536; Eufaula Water Co. v. Addyston Pipe & Steel Co., 89 Ala. 552, 560, 8 South. 25.

The bill avers that defendant municipality is insolvent and unable to pay its debts; that the machinery in question is used daily as a part of its waterworks system, and becoming less valuable, and in the course of time will be worn out and destroyed; that in order to protect the rights of complainant, to prevent depreciations in value of said machinery, and to preserve the status quo of the property until a final hearing of the cause, it is asked that a receiver be appointed to take charge of and hold said property, or to operate the same under proper orders of the chancery court, the "net proceeds from such operation to be held in this honorable court by said receiver for the benefit of orator or respondent, as your honor may decree."

In regard to the property furnished under the right of contract in the acquirement of the authorized public utility, we have observed that, by appropriate and timely action, payment therefor may have been compelled from the proceeds of the sale of waterworks bonds. Failing so to protect itself against a dissipation of the special fund, from which it should have had payment of the balance of the purchase price of said machinery, Fairbanks, Morse & Co. may not now maintain an action against the town of Camden for a general or money judgment.

It is further urged that the "accepted" written proposal and contract to sell said machinery to the town of Camden was not executed as required by statute. Code, § 1183. An examination of the writing exhibited in the bill will show that it was legally "signed and executed" by that municipality. It was not necessary that the pleading exhibit the appropriate resolution authorizing the execution of said written contract; this being a matter to be shown on the trial of the facts in support of the authority of said officials for making, signing, and executing the written contract in the name of the town of Camden. The averment of authority was sufficient.

Under the averred circumstances of the case, the contracting parties are shown to have intended and agreed that the deferred payment for said machinery, furnished for the specific purpose permitted by the Constitution, be secured by a lien thereon. When said machinery was delivered, part payment made therein, and it was installed with the city's other properties as a part of its waterworks, it became so affixed (Ross & Co. v. Perry, 105 Ala. 533, 538, 16 South. 915) as a part of its realty that it is necessary for a court of equity to adjust the respective equities of the parties, and, if required, direct a sale of said machinery in the enforcement of complainant's lien, and, by appropriate order, permit its removal as not to unnecessarily injure and interfere with respondent's other properties installed with it, and as not to unnecessarily interfere with the rights of the general public dependent upon the use and protection of such public utility.

When Wood v. Holly Mfg. Co., supra, is

understood by reference to the original record, it will be seen that the suit was for the enforcement of an equitable lien for purchase money of machinery furnished and installed as a part of the Bienville Water Supply Company's system at Moblie, and the right of such contributing vendor furnishing the necessary machinery in question was maintained as superior to a mortgage claiming precedence of lien by reason of the provisions of his mortgage as to after-acquired property. The contract in question there held to be an equitable lien (made by Bullock & Co. with Holly Manufacturing Company, Supreme Court Record, November Term, 1893, No. 1096, p. 225) contains the stipulation:

"It is expressly understood and agreed that the party of the second part shall have a lien on all of said engines and connections, and the said party of the second part may remain in and have full possession thereof until the whole amount of the purchase price of said engines and connections shall have been fully paid to the party of the second part or its assigns."

So, also, in Ross & Co. v. Perry, supra, though the contract in writing contained a reservation of title until the purchase price of the lumber was paid, this court held that under the circumstances of the case averred and, finding expression in the contract, the primary purpose of the parties entering therein was to create an equitable mortgage on the whole property, since the lumber had been used throughout the whole building and not any well-established part thereof, and relief was awarded under the bill and its general prayer. Here the machinery in question was not used generally throughout the waterworks of Camden, but only in its pumping station, and to the coupling of about 15 feet distant from the engine to its water mains.

We are of opinion that, under the averments contained in the bill, complete and adequate remedy at law does not exist, and that the decree of the circuit court, sitting in equity, should be affirmed.

Justices McCLELLAN, SOMERVILLE, and GARDNER concur with the writer that the contract of the complainant with the town of Camden was made and so executed by that municipality as to meet the requirements of the statute, for the purchase of a material and necessary part of the machinery for the construction of its waterworks system; but McCLELLAN, J., does not concur in the result attained.

Justices SAYRE, SOMERVILLE, and GARDNER concur with the writer that there is not an adequate remedy at law, and that the circuit court, in equity, is shown to have jurisdiction to enforce a lien in behalf of complainant on respondent's property described in Exhibit A, and used by the municipality in the construction of and as a part of its system of waterworks. The reasons for the concurrence by SAYRE, J., in the result attained, are indicated in his separate opinion infra.

Chief Justice ANDERSON and Justices McCLELLAN and BROWN are of the opinion that the complainant may maintain detinue to recover the subject-matter of the sale on the facts stated in the bill, and they dissent from the conclusion to affirm, on the ground that complainant has a complete and adequate remedy at law. The views of Justices McCLELLAN and BROWN are given expression in their separate opinions infra.

Affirmed.

SOMERVILLE and GARDNER, JJ., concur in the opinion.

SAYRE, J., concurs in the result. ANDERSON, C. J., and McCLELLAN and BROWN, JJ., dissent.

McCLELLAN, J. (dissenting). The appellee filed this bill against the appellant, seeking, in the alternatives asserted, remedies and reliefs that the appellee conceives to be its due, consequent upon the failure or refusal of the appellant to pay for certain machinery and attachments that were sold, on terms, by appellee to appellant to constitute and, being installed, now constitute, a part of the waterworks system of the appellant. The demurrer to the bill was overruled, to review which action this appeal is alone concerned. The transaction was reduced to writing, exhibited in copy with the bill.

A primary question raised by the demurrer is whether the contract so exhibited was efficaciously executed on the part of the municipality. There is no contention that the appellee did not efficiently execute the writing. Assuming, for the occasion only, that the statute to be quoted applied to this municipality, the particular basis for the objection that the writing was not efficiently executed by the town is found in the provisions of Code, § 1183. So far as pertinent that section reads:

"Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town, by the officers authorized to make the same, and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town, and all obligations for the payment of money by the municipality, except for bonds and interest coupons, shall be attested by the clerk."

In the third paragraph of the original bill it is unequivocally averred—with special reference to the contract in question—that the mayor, E. W. Berry, and the town clerk, D. H. Matthews, were "both duly authorized by proper ordinance or resolution" to act in the premises, thus refuting, by express averment,

any possible implication or conclusion that the mayor and the town clerk, whose names appear on the writing as reproduced below, were not shown to have been vested with power and authority to engage as the contract contemplated. The quoted allegation of authority on the part of the.mayor and town clerk to effectually act in the premises was sufficient. Alley v. Jesse French Co., 148 Ala. 303, 304, 42 South. 623; McGeever v. Harris, 148 Ala. 503, 41 South. 930. Even in proceedings rested upon an ordinance, it is not necessary to set out the ordinance. Rosenberg v. City of Selma, 168 Ala. 195, 197, 198, 52 South. 742.

The ground of demurrer (tenth) taking this objection to the bill was ill-founded. The writing in question, that was in the form of a proposition from the appellee to the appellant, was captioned or addressed in this way: "To Town of Camden, Purchaser." At the end of the paper, following the signature of the appellee, by its agent, this appears:

"The above proposal is hereby accepted this 10th day of Feb., 1916.
   "E. W. Berry, Mayor,
   "B. H. Matthews, Town Clerk,
   "Camden, Alabama.
"Town seal lost at present. E. W. Berry, Mayor.
"Signed in presence of J. N. Stanford, Judge of Probate.
"Approved at New Orleans, La. Fairbanks. Morse & Co., by Jno. Jones, Manager. OK J. OK WH."

The subject of this bargaining was seasonably delivered and installed in the town's waterworks system, and, according to the averments of the bill, the appellant paid, on November 27, 1916, $1,500 in cash on the purchase price ($3,107.75), and, by agreement, was given a credit thereon of $194.20 as of December 20, 1916. The reference (quoted above, over the name of the mayor) on the paper to the "town seal" denotes, unmistakably, that the design was to engage for the town of Camden, through the impress of the "town seal," and to excuse its use for the reason there given, viz. its loss at the time. However, the omission of a corporation to execute an instrument under, over, or against its corporate seal is not essential to the valid execution of a contract required to be in writing; "the doctrine," to quote Judge Freeman in 13 Am. Dec. 562, "that a corporation cannot make or authorize a contract except under its corporate seal is entirely exploded in this country." 10 Cyc. p. 1004; Everett v. United States, 6 Port. 166, 30 Am. Dec. 584; 2 Page on Contracts, § 558. In this state it has been repeatedly affirmed that the only effect of the use, by officers, of the corporate seal in executing instruments, is to afford evidence, prima facie, of the authority of the officer in the premises. Amer., etc., Bank v. Smith, 122 Ala. 502, 505, 27 South.

919, and decisions therein cited; Allen v. Alston, 147 Ala. 609, 612, 41 South. 159. No statute establishing the use of the corporate seal in the execution of municipal contracts as a prerequisite to their effectual consummation appears to exist in this state. In the absence of such a statute or law, the rule stated is applicable and must be observed.

It is well settled here, as it is generally, that slight mistakes in the names of corporations undertaking to execute contracts do not avoid contracts otherwise validly executed. Douglass v. Bank of Mobile, 19 Ala. 659, 662; Mayor, etc. v. Smith, 137 Ala. 382, 386, 35 South. 120. The third headnote to Douglass v. Bank of Mobile supra, tersely states the principle:

"When a corporation is a party to a deed, a mistake in setting out its name will not vitiate the deed, if it is apparent from the face of it that the corporation was intended thereby."

Recurring to the statute (Code, § 1183), a substantial compliance therewith is all that could be required to meet its demands. To affirm otherwise would involve an abrupt and unjustifiable departure from the view, always prevailing here, that the mandates of statutes governing the form and method for executing instruments, even of the most solemn character, are met if there is a substantial compliance therewith. Illustrations of this rule are familiar and readily accessible. The written proposition submitted by the appellee, together with the averred acceptance thereof by the municipality, operated to impose the duties and obligations of a contract, provided the requirements of Code, § 1183, with respect to the signing of the acceptance thereof by or for the municipality, were substantially met. That the contract, contemplated as evidenced by the writing, was the engagement of the municipality, and not that of the individuals (Berry and Matthews), whose names appear on the paper, is too plain to admit of doubt.

The case of Hall v. Cockrell, 28 Ala. 507, holds nothing to the contrary. It is without bearing in the present materially different circumstances. The instrument there considered was signed by the individuals only, against and under their individual seals, and, as the court observed, did "not purport on its face" to be the act of the corporation; that it only bore "covenants of the individuals," who, as individuals, and as "the parties of the second part," entered into them. The terms of the instrument and the circumstances disclosed by the averments of the bill (2 Page on Contr. § 1123) demonstrate that the only contract contemplated was between the appellee and the municipality, the appellant; there being no manifestation whatsoever of an intention to deal with or to impose contractual obligation upon the individuals, Berry and Matthews. Hence the contract's.

efficacy and force depend entirely upon its effectiveness as imposing obligations upon the municipality, appellant. Where an instrument is fairly susceptible of two interpretations, one of which will accord its effect and operation, and the other will render it wholly abortive, the judicial disposition and duty is to adopt the interpretation that will sustain and give effect to the instrument. Adams v. Adams, 26 Ala. 272, 279; Evans v. Sanders, 8 Port. 497, 33 Am. Dec. 297; 2 Page on Contr. § 1120, among others.

This writing bears the signature of the mayor and of the town clerk as such. It is recited over the signature of the mayor that the "town seal" was "lost" at the time. The terms of the acceptance, over the signature of the mayor and town clerk, refer, unmistakably, to the proposition, made by the appellee, to the "Town of Camden, Purchaser." The words "Camden, Alabama," are (in this record, which appears to follow the form of the original) set in immediately below the name of the town clerk. The fact that the true corporate name, viz. Town of Camden, Alabama, was not used—the omission being of the words "Town of"—did not avoid the instrument because of ineffectual execution, under the mandate of Code, § 1183, quoted before. It was but a slight mistake, a quasi misnomer, that was not even capable of misleading. Authorities supra. The words "Camden, Alabama"—the merely imperfect name of the municipality—were evidently put there by the mayor and town clerk, who, the bill avers, were "duly authorized" in the premises. The only argument possible is predicated of the relative place of the words "Camden, Alabama," on the instrument. If "Camden, Alabama," had been written above the signature of the mayor, no rational doubt could have been entertained that the mandate of Code, § 1183, was substantially observed. Every circumstance, as well as the writing, discloses the intent of all parties to bind the municipality. That corporation accepted the subjects of the sale and installed them. It paid over half of the purchase price named in the writing. It had secured the necessary electoral authority to issue bonds to raise money to construct a waterworks system, of which the subject of this sale was bought to afford, and was made, a part. There can be no reasonable doubt of the intention entertained by all the parties. In order to complete the basis for the argument indicated, the word "of" must be regarded as interposed after the words "Town Clerk"—taking the place of the comma there used—to the end that the words "Camden, Alabama," may be interpreted as denoting the post office address of the mayor and the town clerk. The courts often transpose, and upon proper occasion eliminate, expressions from writings of a contractual nature (2 Page on Contr. §§ 1124, 1125), but they never transpose or read in a word or phrase in order to annul a contract otherwise validly made. There is no reason shown for so limiting the words "Camden, Alabama." So to interpret them is to seek for ground on which to avoid a valid obligation; whereas, the rule is that the courts will seek, by all fair, reasonable means, to sustain contracts. It has been often decided that the place on any instrument where a signature is made is not material to its effectual execution. 9 Cyc. p. 301.

It results from the foregoing considerations that this instrument, exhibited with the bill, had authoritatively affixed thereto the name of the municipality, the appellant, and that it was effectually executed by and for the municipality through its mayor and town clerk, who, the bill avers, were duly authorized in the premises.

In the contract, thus bindingly made, the appellee reserved the title to the property until it was fully paid for, and also expressly provided against its becoming a part of the realty. As the bill is now framed, no sufficient facts are averred conducing to the conclusion that, notwithstanding the stipulation last stated this property became a part of the realty, so as to subject the entire plant to the lien of an equitable mortgage within the doctrine (if applicable) of Ross v. Perry, 105 Ala. 533, 16 South. 915—a doctrine that the writer, together with Anderson, C. J. and Gardner, J. (dissenting), took account of in Kerlin v. Ramage, 200 Ala. 428, 76 South. 360, L. R. A. 1918A, 142. According to the facts averred in this bill, the appellee (complainant) had and has an adequate remedy at law to recover the subject-matter of the conditional sale shown by Exhibit A to the original bill; and hence the bill is without equity, and the court, in my judgment, erred in overruling appellant's demurrer taking that objection thereto. It is manifest from the averments of the bill that the debt limit, fixed by the Constitution (section 225), would be illegally exceeded, if any general liability whatsoever was visited upon this appellant in consequence, however resulting, of this contract. The fund produced by the sale of the waterworks bonds should have been exclusively applied to that purpose. A devotion of any part of that fund to another purpose was illegal, an act that could not operate to impose on the municipality an obligation or liability in excess of the debt limit fixed by the Constitution.

On the considerations stated, the decree should, in my opinion, be reversed; and I therefore dissent from the conclusion announced.

SAYRE, J. (concurring specially). In my opinion, the majority of the court, in holding that the contract in this case was executed in accordance with the statute, have not followed the law of City of Mobile v. Mobile

Electric Co., 84 South. 816.[2] In the view of the case presented by the most recent holding viz. that the contract was executed according to law, I concur with Judge THOMAS that complainant should have a lien, but that lien, in my judgment, should be spread over the entire system of waterworks. My view of the case presented by the bill, the so-called contract eliminated, as I think it should be, is this, in short: The contract—so, for convenience, to speak of the arrangement into which the parties entered, for it cannot be assumed that the town of Camden acquired possession of appellee's property otherwise than by some arrangement between them—that contract cannot be allowed to impose any general obligation on the town of Camden, for the reason that, apart from any such obligation, the town was indebted to the constitutional limit; still there is a clear moral obligation resting upon the town, if it would retain the machine, to pay for it, and the contract or agreement by which the town got the machine has been fully performed by the vendor, appellee. I think it may be assumed as a matter of common knowledge that to separate and cart away its pump would take the heart out of the waterworks system. At any rate, I think complainant will be able to aver and prove such to be the case. Being a public utility, I do not think the court should make any order or send the parties to a court where nothing could be done except destroy the system. Eufaula Water Co. v. Addyston Pipe & Steel Co., 89 Ala. 552, and authorities cited at the bottom of page 560, 8 South. 25; City of Decatur v. Sou. Ry. Co., 183 Ala. 531, 62 South. 855, 48 L. R. A. (N. S.) 231. My judgment is, therefore, that the proper remedy would be to declare a lien as was done in Ross v. Perry, 105 Ala. 533, 16 South. 915. As for the question raised about the use of the streets and section 220 of the Constitution, the town has agreed to the use of its streets for waterworks purposes, and should not be allowed to change its mind in order to defeat a just claim.

I, therefore, concur in the conclusion to affirm the decree overruling the demurrer.

BROWN, J. (dissenting). This case was submitted and considered under rule 46 (65 South. vii[3]). The bill presents the complainant's case in two aspects:

The first theory is that under the terms of the paper attached as Exhibit A to the bill, while the legal title to the property was in substance and legal effect reserved in the complainant, yet the supposed contract recognized in respondent an equity which, in the event of foreclosure, entitled it to any surplus in the proceeds of the sale remaining after satisfaction of the balance due on the purchase price and expenses incident to the foreclosure, and a court of equity will treat it as a mortgage and proceed to a foreclosure. Turnipseed v. Cunningham, 16 Ala. 501, 50 Am. Dec. 190; Wood et al. v. Holly Manufacturing Co., 100 Ala. 326, 13 South. 948, 46 Am. St. Rep. 56.

Two reasons appear on the face of the bill, when considered in connection with the exhibit, why this aspect of the case cannot be sustained:

(1) The contract was not executed in the name of the town, as required by the statute, and therefore it cannot be looked to as vesting in the complainant any right, or fixing any legal obligation on the respondent. Code 1907, § 1183; City of Mobile v. Mobile Electric Co., 84 South. 816,[4] and authorities there cited. The words "Camden, Alabama," manifestly were not affixed to the paper as the town's signature, but merely to designate a geographical location, or the post office address of the town clerk, and no matter what the parties intended in respect to the execution of the contract in the name of the town, they did not so execute it, and in so far as the "Town of Camden" is concerned it is a case of non est factum. Code 1907, §§ 1046, 1183; Hall v. Cockrell, 28 Ala. 507.

(2) Before the negotiations for the purchase of the property were concluded, the town of Camden had contracted a debt in the issuance and sale of bonds to the full limit allowed by the Constitution, and the town authorities were without power to bind the municipality in contracting further general indebtedness. Constitution 1901, § 224; Gunter et al. v. Hackworth, 182 Ala. 205, 62 South. 101; Moody v. Terrell-Hedges Co., 16 Ala. App. 441, 78 South. 639; State ex rel. Terrell-Hedges Co. v. Moody, 202 Ala. 444, 80 South. 828; 19 R. C. L. 987, par. 284.

It is elementary that one of the essentials to a mortgage is the existence of a debt to be secured thereby. West v. Hendrix, 28 Ala. 226; Robinson v. Farrelly, 16 Ala. 472, 2 Mayf. Dig. 583, par. 29. But it is suggested that, inasmuch as it appears that the engine and its accessories are attached to, and being used as a part of, respondent's system of waterworks—as was the manifest contemplation and intention of the parties—and assuming that they have become so affixed thereto that they cannot be removed without destroying, for at least a considerable time, the efficiency of the system, thereby causing public inconvenience and probable hazard to the health of the community, the principle announced in Ross & Co. v. Perry, 105 Ala. 533, 16 South. 915, may be invoked; and, acting thereon, a court of equity, to prevent a failure of justice and at the same time conserve the public convenience and health, will declare an equitable lien on the

[2] 203 Ala. 574.      [3] 178 Ala. xix.      [4] 203 Ala. 574.

entire system of waterworks, and foreclose the same by a sale of the plant for the satisfaction of complainant's claim.

Pretermitting the question of the manifest injustice of declaring such a lien, and thereby creating, as between the parties, a contract which was never contemplated by them, such course would, because of the insolvency of the town, foreshadow the sacrifice of its property for a claim for which it is not legally liable, though a moral obligation may rest upon it to satisfy such claim; yet reasons are manifest why this cannot be done. A lien cannot exist and will not be raised by a court of equity, except as incident to an existing debt, capable of enforcement either in personam or in rem. Turnipseed v. Cunningham, supra; Relfe v. Relfe, 34 Ala. 500, 73 Am. Dec. 467. And for this reason a lien in favor of the complainant cannot be declared on the plant or specific property in question.

It is true in the case last cited an equitable lien was declared—though the debt upon which it was rested was barred by the statute of limitations. However, in that case, it was held that the effect of the bar of the statute of limitations was merely to destroy the remedy for the enforcement of the debt in personam, and that the debt still existed and could be enforced by a proceeding in rem. There is no debt against the town of Camden in this case, and there can be none, because of the limitation fixed by the Constitution, and this prevents the application of the principles announced in Ross & Co. v. Perry, supra, and Wood et al. v. Holly Manufacturing Co., supra.

Another reason is apparent why such lien will not be raised and enforced in this case. The establishment and foreclosure of such lien by a sale of the entire property would, of course, vest in the purchaser at such foreclosure sale the title to the property, and the right to remove so much thereof as would not disturb the use of the public streets and ways of the town, and would necessarily result in the destruction of the entire waterworks system. Such a sale could not carry with it the franchise to operate the waterworks system, as this can only be acquired by the consent of the town authorities. Constitution 1901, § 220; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117.

This brings us to a consideration of the other aspect of complainant's case. When the property in question was delivered to the town of Camden, it had in its treasury money obtained from the sale of bonds issued, as authorized by the Constitution, for the purpose of constructing a system of waterworks, and the town authorities were authorized to purchase, for cash, the property in question, and pay therefor out of the special fund then in the town treasury; and

the complainant had the right to assume that the town authorities would not make purchases beyond the ability of the town to pay, and that the property in question would be paid for out of this special fund. However, it appears from the averments of the bill that the town is now insolvent and unable to pay the complainant the balance remaining unpaid on the purchase price of the property in question; and it may be assumed from these averments that this special fund has been exhausted in making purchases incident to the construction of said waterworks system.

We have, therefore, a case where the negotiations for the sale of property, entered into in good faith, have failed of consummation because of the legal disability of the purchaser to comply with the terms of sale, and the possession of the property has been parted with by the seller in good faith under a mistake of fact. This arms the seller with a right to tender back whatever it has received in part payment, and to rescind the sale in so far as it has been performed by it, and reclaim the property. Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. Ed. 378; General Electric Co. v. Town of Fort Deposit, 174 Ala. 179, 56 South. 802; Municipal Security Co. v. Baker County, 39 Or. 399, 65 Pac. 370.

There is in the bill an absence of averment showing that the property has lost its character as personalty by being so attached to the freehold as to become a part thereof; so, upon the facts pleaded, the right of the complainant to rescind may be effected in an action at law. General Electric Co. v. Town of Ft. Deposit, supra; Wellden v. Witt, 145 Ala. 605, 40 South. 126; Wilcox v. San Jose Fruit Packing Co., 113 Ala. 519, 21 South. 376, 59 Am. St. Rep. 135; Continental Jewelry Co. v. Pugh Bros., 168 Ala. 303, 53 South. 324, Ann. Cas. 1912A, 657; Whitworth v. Thomas, 83 Ala. 308, 3 South. 781, 3 Am. St. Rep. 725.

On the other hand, if the contract was efficaciously executed, as the majority of the court hold, it is manifest, under the terms of the contract, that the complainant has the legal title to the property, and, no matter if it is affixed as a part of the waterworks system, it may be recovered in an action of law. The contract expressly preserves the status of the property as personal property. Authorities supra.

This being true, the demurrer taking the point that the complainant has an adequate remedy at law under the facts here pleaded was well taken, and should have been sustained. Yellow Pine Export Co. v. Sutherland-Innis Co., 141 Ala. 664, 37 South. 922.

I therefore respectfully dissent.

ANDERSON, C. J., concurs in the foregoing views.